Edward GREEN III, aka
Peanut, Appellant,

v.

The STATE of Texas, Appellee.

No. 71744.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 4, 1995.

Janet Morrow, Houston, for appellant.

Dan McCrory, Assistant District Attorney, Houston, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

The offense is capital murder, and the sentence is death. Appellant raises sixteen points of error. We affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on August 31, 1992, the 18–year old appellant shot and killed two people when he attempted to rob them as they sat in their car at an intersection. Appellant later bragged about committing the offense and laughed at "the way the old man was shaking in the car after [appellant] shot him." Appellant later confessed to the police that he committed the offense.

At punishment, the State presented various witnesses who portrayed appellant as an

"antisocial, dangerous criminal." For example, when he was fifteen, appellant sexually assaulted a 14–year–old girl. Appellant was incarcerated in the Texas Youth Commission (TYC) for this offense. Appellant engaged in violent behavior at TYC. TYC employees testified appellant hated women. Appellant was eventually paroled out of TYC.

Appellant's parole officers testified appellant was a "bad parolee." Appellant committed several offenses, including this offense, while he was on parole. Appellant expressed no remorse to the police when he confessed to this offense. Appellant attacked another prisoner with a shank while appellant was in the county jail awaiting trial for this offense. Appellant also engaged in other violent behavior in the county jail. The State presented other evidence to support an inference that appellant's upbringing did not lack in "advantages or opportunities," and he had the "tools to live a decent life."

Appellant presented the testimony of Campos who was a program therapist at a TYC sex offender treatment program. Campos was appellant's therapist in this program. Campos testified his initial assessment of appellant was that he appeared depressed and was shy, withdrawn, and very angry. Campos testified the origin of appellant's anger was, among other things, his being unable "to have a complete relationship with individuals, the lack of nurturing by the parents."

Campos attributed most of appellant's antisocial behavior to a "troubled childhood." Appellant's father was killed when appellant was eight or nine years old. Appellant's father was found hanging from a tree. Appellant's mother testified the killing was drug-related. Appellant's mother also testified appellant did not have much contact with his father since appellant's parents' divorce in 1979. Appellant's mother testified appellant's father physically abused her but not appellant. Appellant's mother was an alcoholic and a cocaine addict who spent much of her time away from the household. Appellant's primary caregivers were his aunt and grandmother.

Campos testified appellant began to show some progress from the TYC therapy sessions when appellant "started dealing with the death of his father." Campos testified that near the end of his treatment, appellant was still angry but he also had become "receptive to exploring his grief cycle" and was more receptive to seeing how a "normal family" functioned. Campos testified appellant was even beginning to show some signs of developing "victim empathy."

On cross-examination, Campos testified appellant failed his first exit interview from TYC. Campos testified appellant was disrespectful toward the staff and made derogatory comments about women during this interview.

"Q. Mr. Campos, in the exit interview that [appellant's counsel] was talking to you about, you had indicated that he—that [appellant], in his first exit interview, became angry, cursed, he was disrespectful to the staff and he made some derogatory statements towards women; is that correct?

"A. That's correct.

"Q. Did he make any specific statements about victims or—regarding his victim empathy?

"A. He stated, 'I really don't care about my victim. All women are bitches.'"

Campos testified any progress appellant made in the TYC program was a "function of the intense work that [he and appellant] did together."

"Q. I mean, it took a lot to get him to make any inroads into his problems, didn't it?

"A. Yes, it did, sir."

Campos also testified appellant is intelligent and is an "excellent manipulator." Campos testified appellant was referred to another doctor for follow-up sex offender treatment upon his release from TYC. However, appellant eventually stopped attending these treatment sessions. Campos also testified appellant considered himself a "victim." Campos agreed with the prosecutor this was a mechanism for shifting blame and not accepting responsibility for one's actions. Campos testified a person who perceives

himself as a "victim" thinks people are out to get him and he is a "poor little child."

In point of error one, appellant asserts the trial court violated the Federal and State Constitutions and Article 36.28, V.A.C.C.P., in responding to a jury note at punishment in a manner that was "unrealistic, unnecessarily restrictive and highly prejudicial." In point of error two, appellant asserts the trial court's response to the jury note "improperly gave an instruction on a factual matter" in violation of the United States and State Constitutions, and Articles 36.14 and 36.15, V.A.C.C.P. In point of error three, appellant asserts the trial court's response to the jury note was an improper comment on the weight of the evidence in violation of Article 38.05, V.A.C.C.P.

The record reflects that as the·jury was deliberating on the punishment issues, it sent out several notes. The jury sent a note requesting definitions of "personal moral culpability" and "sufficient mitigating circumstances." The word "sufficient" was circled. The trial court instructed the jury to refer to the court's charge. The jury later sent a note saying it was deadlocked on special issue two on mitigation and asking what to do next. The trial court instructed the jury to continue its deliberations. The jury subsequently sent another note asking for a "copy of [Campos'] testimony." The trial court responded in writing that:

> "the law provides that if the jury disagree as to the statement of any witness, they may, upon application to the Court, have read to them from the court reporter's notes that part of a witness' testimony on the particular part in dispute, and no other."

The jury sent out another note confirming it was in "dispute as to whether or not [Campos] "stated [appellant] had 'emotional problems,'" and asking whether Campos "state[d] [appellant] had 'emotional problems.'" The jury's note had the term "emotional problems" in quotation marks. The trial court responded in writing that:

> "[Campos] never used the term 'emotional problems'!" The trial court's response also had the term "emotional problems" in quota-

tion marks. The jury returned its verdict the next day.

■ Appellant claims the trial court's response that Campos never used the term "emotional problems" was improper. However, the record does not reflect appellant objected to the trial court's response. Therefore, he presents nothing for review. See Tex.R.App.Proc. 52(a); *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Cr.App.1993); *Campbell v. State*, 545 S.W.2d 791, 796 (Tex. Cr.App.1977).

Appellant apparently argues he had no opportunity to object because trial counsel "may not have known of the note and response at all, as far as the record shows." This Court does not decide cases based on speculation about matters not shown in the record. See Tex.R.App.Proc. 50(d). In the absence of a showing to the contrary in the record, we presume the trial court's response was in open court and in appellant's presence. See Article 36.27, V.A.C.C.P.; *Smith v. State*, 513 S.W.2d 823, 829 (Tex.Cr.App. 1974). Therefore, we also presume appellant had an opportunity to object.

■ Appellant also argues the trial court's response "egregiously harmed" him under the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984) (op. on reh'g). See *Daniell v. State*, 848 S.W.2d 145, 147 (Tex.Cr.App.1993) (when the trial court responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction). Appellant argues the trial court's response "egregiously harmed" him because it was inconsistent with his defense and the whole tenor of Campos' testimony that appellant did have "emotional problems." He claims the trial court's response, especially the exclamation point at the end of it, was a comment on the weight of the evidence because it "emphasized to the jury that in the court's opinion the testimony did not support a conclusion that Appellant suffered emotional problems." Appellant also argues the trial court's response had the effect of instructing the jury not to consider any aspects of Campos' testimony as mitigating which rendered the punishment hearing fundamentally unfair.

Since we presume the trial court's response was in open court and in appellant's presence, we also presume appellant agreed to it. Therefore, appellant waived any error, and the *Almanza* standard is inapplicable. See *Marin,* 851 S.W.2d at 279; Article 1.14, V.A.C.C.P.

Assuming the applicability of the *Almanza* standard, we find no "egregious harm." See *id.; Campbell,* 545 S.W.2d at 796. The trial court responded to a narrow and straightforward jury question with a narrow and straightforward answer that was responsive to the question asked. The jury asked if Campos *"stated"* appellant had "emotional problems" with this term in quotation marks, and the trial court responded Campos never used the term "emotional problems" with this term also in quotation marks. And, our review of Campos' testimony indicates he never used the term "emotional problems."

The trial court's response, including the exclamation point at the end of it, was not a comment on the weight of the evidence, and it expressed no opinion that Campos' testimony did not support a conclusion appellant had "emotional problems." See *Mathis v. State,* 471 S.W.2d 396, 397 (Tex.Cr.App.1971) (trial court's response to jury note that the witness testified "the porch light was on" was not a comment on the weight of the evidence). The trial court's response also had no bearing on whether the jury should consider any aspects of Campos' testimony as mitigating, and it did not instruct the jury to disregard any mitigating aspects of Campos' testimony. Finally, the jury did not return its verdict until the day after the trial court responded to its note. The trial court's response had no improper effect on the jury's verdict; therefore, we find no "egregious harm."

Appellant relies on *Daniell* in support of his argument the trial court's response "instructed the jury on a factual matter." See *Daniell,* 848 S.W.2d at 147. We find *Daniell* distinguishable because the trial court's response instructed the jury on a factual matter outside the record, and *Daniell* did not concern a dispute among the jury concerning the testimony of a witness. See *Daniell,* 848 S.W.2d at 147. Here, the trial court's re-

sponse was an objective conclusion based on the record concerning a dispute among the jury about the testimony of a witness. See *Mathis,* 471 S.W.2d at 397.

In addition, without identifying precisely what portion or portions of Campos' testimony he believes should have been submitted to the jury, appellant cites several cases in support of his argument the trial court interpreted the jury's note too narrowly and unrealistically making the trial court's response a violation of Article 36.28. See, e.g., *Jones v. State,* 706 S.W.2d 664, 667–68 (Tex.Cr.App. 1986); *Iness v. State,* 606 S.W.2d 306, 314 (Tex.Cr.App.1980). Appellant argues the point in dispute among the jury was whether it was Campos' opinion that appellant had "emotional problems" not whether Campos used the term "emotional problems." Appellant also argues:

> "In Appellant's case, the court did not allow *anything* to be read back, although anger, hatred and grief are undoubtedly 'emotions,' and Mr. Campos testified that Appellant certainly had problems relating to those very emotions. All Campos's testimony *cited in the first section of this point of error* pertains to Appellant's emotional problems—Campos explained Appellant's bad behavior in terms of those problems and testified that he has made progress (changed his behavior) only when he began to acknowledge, explore and deal with those problems. Classic mitigation." (Emphasis supplied)

Therefore, we assume it is appellant's position the trial court should have read back those portions of Campos' testimony "cited in the first section of this point of error." However, it would not have been feasible to have read back only those portions of Campos' testimony "cited in the first section of this point of error." The trial court would have had to have read back the entirety of Campos' testimony in order to have presented those portions "cited in the first section of this point of error." The State argues it would have been error to do this.

However, we need not decide whether the trial court's response violated Article 36.28. We have decided appellant waived any error in the trial court's response. We also have

decided any error in the trial court's response did not "egregiously harm" appellant in part because the trial court's response did not "instruct the jury on a factual matter" and it was not a comment on the weight of the evidence. This Court need not go any further in resolving these points of error. Points of error one through three are overruled.

■■■ In point of error four, appellant argues the "12–10" rule of Article 37.071, V.A.C.C.P., which requires at least ten "no" votes for the jury to return a negative answer to the first or second special issues and at least ten "yes" votes for the jury to return an affirmative answer to the third special issue on mitigation, violates the Eighth Amendment to the United States Constitution and Article I, Section 13, of the Texas Constitution. In point of error five, appellant argues the failure of Article 37.071 to inform the jury that a single holdout juror on any special issue would result in an automatic life sentence violates the Eighth Amendment to the United States Constitution, and Article I, section 13, of the Texas Constitution. In point of error five-A, appellant argues that as a consequence of the provision prohibiting the jury's being informed of the effect of their failure to agree to the answers to the punishment issues according to the "12–10" rule, the trial court should have accepted the jury's statement that it was deadlocked and should have immediately imposed a life sentence.

This Court has rejected these and similar claims appellant raises under these points of error. See *Hathorn v. State,* 848 S.W.2d 101, 124–26 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993); *Draughon v. State,* 831 S.W.2d 331, 337–38 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). In addition, with respect to point of error five-A, the record does not reflect appellant presented this claim to the trial court; therefore, he presents nothing for review. See Tex.R.App.Proc. 52(a). Points of error four through five-A are overruled.

In points of error six and seven, appellant argues the trial court erred in overruling appellant's challenge to the death penalty scheme on the ground that denying jurors the knowledge of the 35–year minimum incarceration results in the arbitrary imposition of the death penalty in violation of the Eighth Amendment to the United States Constitution, and Article I, Sections 10, 13, and 19, of the Texas Constitution. The record does not reflect appellant presented these claims to the trial court; therefore, as a matter of state law, he presents nothing for review. See Tex.R.App.Proc. 52(a). In addition, this Court has resolved these claims adversely to appellant. See *Smith v. State,* 898 S.W.2d 838 (Tex.Cr.App.1995) (pet. for cert. pending). Points of error six and seven are overruled.

■■■ In point of error eight, appellant argues the "Texas Death Penalty Statute" is unconstitutional as applied to him because it fails to narrow the sentencer's discretion as a result of the deletion of the "deliberateness" special issue. In point of error nine, appellant argues the "Texas Death Penalty Statute" is unconstitutional as applied to him because it wholly fails to channel the sentencer's discretion by consideration of the underlying crime or offense. In point of error ten, appellant argues the "Texas Death Penalty Scheme" is unconstitutional as applied to him because the "future dangerousness" special issue does not encompass consideration of the act or conduct that formed the basis of conviction in any meaningful manner.

The record reflects the trial court denied appellant's pretrial motion to set aside the indictment which claimed, among other things, the Texas death penalty scheme was unconstitutional because it "does not properly narrow the class of persons eligible for the ultimate punishment." On appeal, appellant argues Article 37.071 fails to properly narrow the class of defendants subject to execution because "it fails to direct the sentencer's discretion to include consideration of circumstances of the offense in any *meaningful* manner." Appellant claims Texas' death penalty scheme is unconstitutional because its focus "seems to be almost entirely on the circumstances of the offender" to the exclusion of consideration of "offense-specific criteria." Appellant further argues that, as ap-

plied to him, "the special issues did nothing to insure that the sentencer's decision was not an act of unbridled discretion."

The State argues appellant failed to preserve these claims for appeal. We agree, and hold appellant's motion claiming the Texas death penalty scheme "does not properly narrow the class of persons eligible for the ultimate punishment" was too general to preserve the claims he now advances on appeal. See Tex.R.App.Proc. 52(a). Therefore, as a matter of state law, appellant presents nothing for review.

In addition, the deletion of the "deliberateness" special issue does not render Texas' death penalty scheme unconstitutional, and Texas' death penalty scheme does allow for consideration of "offense-specific criteria" in a "meaningful manner." See, e.g., *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993); *Joiner v. State*, 825 S.W.2d 701, 704 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993) (in answering the special issue on "future dangerousness," the jury may consider, among other things, the calculated nature of the defendant's acts, the forethought and deliberateness exhibited by the crime's execution, and whether the defendant was acting under duress); compare generally *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (all opinions). We also note the prosecutor's jury arguments urged the jury to consider "offense-specific criteria" in a "meaningful manner."

> "In closing, I'm going to sit down and let the defense attorneys get up here and try to convince you that there's some mitigation. That's their job. They need to point out to you, if there is. I didn't see a single shred of mitigating evidence in this case. Maybe you do. If you did, you've got to consider it. But I just like to say that I think society has given appellant chance after chance after chance. And he gave [the victims] no chance at all.
>
> "He gunned them down in the streets, created all this sadness and all this sorrow,

all these tears that you've heard about and you can feel for a $10 bag of weed."

Points of error eight through ten are overruled.

In points of error eleven and twelve, appellant claims the capital punishment proceedings violated the Eighth and Fourteenth Amendments to the United States Constitution and "Texas Constitutional Protections" because the court charged the jury that it could not be influenced by mere "sympathy" when answering the special issues. Appellant argues the trial court's "sympathy" charge nullified the special issue on mitigation. We disagree, and hold the trial court's "sympathy" charge violated neither the United States nor the Texas Constitutions. See *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); *Wheatfall v. State*, 882 S.W.2d 829, 842–43 (Tex.Cr.App. 1994), cert. denied, —— U.S. ——, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995). Points of error eleven and twelve are overruled.

In points of error thirteen and fourteen, appellant argues the mitigation issue at punishment violated the United States and Texas Constitutions either because it shifted the burden of proof to the defendant or omitted a burden of proof. This Court has resolved these claims adversely to appellant. See *Barnes v. State*, 876 S.W.2d 316, 329–30 (Tex.Cr.App.), cert. denied, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Points of error thirteen and fourteen are overruled.

In point of error fifteen, appellant argues the mitigation issue at punishment is unconstitutional because "it does not require jury consideration of mitigation evidence when answering it." This Court has held the law does not require a juror to consider any particular piece of evidence as mitigating; all the law requires is that a defendant be allowed to present relevant mitigating evidence and that the jury be provided a vehicle to give mitigating effect to that evidence if the jury finds it to be mitigating. See *Barnes*, 876 S.W.2d at 329–30; *Allridge v. State*, 850 S.W.2d 471, 481–82 (Tex.Cr.App.1991), cert. denied, —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). These requirements

were met here. Point of error fifteen is overruled.

The trial court's judgment is affirmed.

CLINTON, J., concurs in the result.

BAIRD, Judge, concurring.

In points of error eight, nine, and ten, appellant contends the current capital punishment scheme is unconstitutional as applied.[1] Although the majority holds appellant's constitutional challenge at trial "was too general to preserve the claims he now advances on appeal," 912 S.W.2d at 195, it nevertheless addresses the merits of appellant's points of error, resolving them in short order. Because this is the first challenge to the constitutionality of Tex.Code Crim.Proc. Ann. art. 37.071, after the September 1, 1991 amendments, I believe the bench and bar are entitled to an informed and thoughtful analysis of the issues presented. Therefore, I write separately.

## I.

To address the constitutionality of a capital punishment scheme under the Eighth Amendment, we must address two aspects of the capital decision-making process: the eligibility decision and the selection decision. *Tuilaepa v. California,* —— U.S. ——, ——, 114 S.Ct. 2630, 2634, 129 L.Ed.2d 750 (1994).

## A.

First, a capital sentencing scheme must narrow the category of persons convicted of murder who are eligible for the death penalty. *Zant v. Stephens,* 462 U.S. 862, 875, 103 S.Ct. 2733, 2741, 77 L.Ed.2d 235 (1983). *See, Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (To pass constitutional muster, a capital sentenc-

ing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.) Thus, to be constitutional, a capital sentencing scheme must require proof of murder and at least one "aggravating circumstance." *Tuilaepa,* —— U.S. at ——, 114 S.Ct. at 2634. The aggravating circumstance may not be vague, *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–1765, 64 L.Ed.2d 398 (1980), and must be such that the capital murder is distinguished from the offense of murder. *Arave v. Creech,* 507 U.S. 463, 473–74, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993).

The Texas capital punishment scheme meets the constitutional requirements concerning the "eligibility decision." Tex.Penal Code Ann. § 19.03 distinguishes capital murder from murder by requiring an aggravating circumstance. These aggravating circumstances include: the murder of a police officer or fireman in the lawful discharge of their duties, § 19.03(a)(1); murder in the course of committing kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, § 19.03(a)(2); murder for remuneration or the employment of another to commit murder, § 19.03(a)(3); murder of a prison official during the defendant's incarceration, murder of another prisoner while incarcerated for capital murder, or murder committed while attempting to escape incarceration, § 19.03(a)(4) and (5); multiple murders, § 19.03(a)(7); and, the murder of a child, § 19.03(a)(8).

Our Legislature's requirement that the State prove one of the circumstances enumerated in § 19.03 "genuinely [narrows] the

---

1. Appellant's points of error state:

POINT OF ERROR EIGHT
THE TEXAS DEATH PENALTY STATUTE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT IN THAT IT FAILED TO NARROW THE SENTENCER'S DISCRETION AS A RESULT OF DELETION OF THE "DELIBERATENESS" SPECIAL ISSUE.
POINT OF ERROR NINE
THE TEXAS DEATH PENALTY STATUTE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT IN THAT IT WHOLLY FAILS TO

CHANNEL THE SENTENCER'S DISCRETION BY CONSIDERATION OF THE UNDERLYING CRIME OR OFFENSE.
POINT OF ERROR TEN
THE TEXAS DEATH PENALTY STATUTE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT IN THAT THE "FUTURE DANGEROUSNESS" SPECIAL ISSUE DOES NOT ENCOMPASS CONSIDERATION OF THE ACT OR CONDUCT THAT FORMED THE BASIS OF CONVICTION IN ANY MEANINGFUL OR STANDARDIZED MANNER.

class of death-eligible persons," *Lowenfield,* 484 U.S. at 245, 108 S.Ct. at 554, directing and limiting the jury's discretion so as to "minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell and Stevens, JJ.). *See also, Zant,* 462 U.S. at 874, 103 S.Ct. at 2741. Thus our capital sentencing scheme passes constitutional muster with respect to the "eligibility decision."

### B.

While the State must provide some standardized criteria to limit those persons *eligible* for capital punishment, the sentencer must further make an *individualized* determination of the appropriateness of capital punishment, considering the character of the individual and the circumstances of the crime. *Tuilaepa,* —— U.S. at ——, 114 S.Ct. at 2635. The jury must be allowed to consider all relevant mitigating evidence, *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) *and, Blystone v. Pennsylvania,* 494 U.S. 299, 303, 110 S.Ct. 1078, 1081, 108 L.Ed.2d 255 (1990), and have a vehicle to give effect to that evidence. *Penry v. Lynaugh,* 492 U.S. 302, 317, 109 S.Ct. 2934, 2946, 106 L.Ed.2d 256 (1989). *See also, Johnson v. Texas,* 509 U.S. ——, ——, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993).

The Texas capital sentencing scheme provides the following punishment issues:

(1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(2) in cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party ... whether the defendant actually caused the death of the deceased, or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Art. 37.071(2)(b). Further, if the jury affirmatively answers those issues, it must then consider the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Art. 37.071(2)(e).

The punishment issues submitted under section (2)(b) allow the jury to consider the defendant's character and record, as well as the circumstances of the crime. Indeed, the future dangerousness issue was approved by the Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). And in *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), and *Johnson v. Texas,* 509 U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), the Supreme Court held such an issue allowed for the individualized determination of the appropriateness of capital punishment in the vast majority of capital cases. *Franklin,* 487 U.S. at 177, 108 S.Ct. at 2329; *Johnson,* 509 U.S. at ——, 113 S.Ct. at 2669.

Moreover, the enactment of an additional punishment issue, focusing the jury's consideration only on the defendant's actions, serves to ensure such an individualized determination. The enactment of art. 37.071(2)(e) was reasonable in light of *Penry*'s holding that our capital sentencing scheme may be unconstitutional *as applied* because it did not allow the jury to give effect to certain types of mitigating evidence. *Penry,* 492 U.S. at 317, 109 S.Ct. at 2946. This punishment issue does not limit the jury's ability to make an individualized determination of the appropriateness of capital punishment. Indeed, in *State v. McPherson,* 851 S.W.2d 846 (Tex.Cr. App.1992), we held a similar punishment issue corrected the constitutional infirmities identified in *Penry.* Thus the "selection decision" to be made under the Texas capital sentencing scheme passes constitutional muster.

### II.

Appellant contends the Legislature's deletion of the "deliberateness issue" renders our capital sentencing scheme unconstitutional as applied, because the jury was not allowed to

consider the circumstances of the offense during its deliberations. I disagree. We have held the circumstances of a capital offense are relevant to the determination of the probability the defendant will commit future violent acts. Art. 37.071(2)(b)(1). *See e.g., Willingham v. State,* 897 S.W.2d 351 (Tex.Cr. App.1995); *and, Hughes v. State,* 897 S.W.2d 285 (Tex.Cr.App.1995). And further, to the extent that the circumstances of the offense are mitigating, the *"Penry"* issue specifically allowed the jury to consider and give effect to such evidence. Art. 37.071(2)(e). Thus, our capital sentencing scheme satisfies the constitutional requirements for a "selection decision," because it requires the jury to make an *individualized* determination of the appropriateness of capital punishment, considering the character of the individual and the circumstances of the crime. *Tuilaepa,* — U.S. at —, 114 S.Ct. at 2635.

### III.

The Texas capital sentencing scheme narrows the class of persons eligible for capital punishment, and insures capital defendants an individualized determination of the circumstances of their offense, character and record. *See, Tuilaepa, supra.* Further, the scheme provides a vehicle for the jury to consider and give effect to all relevant mitigating evidence which militates against the ultimate punishment. *See, Penry, supra.* Thus, the Texas capital sentencing scheme is not unconstitutional.

With these comments I join only the judgment of the Court, and I join Judge Overstreet's concurring opinion.

OVERSTREET, J., joins this opinion.

### OVERSTREET, Judge, concurring.

In point of error eleven, appellant contends that his capital punishment proceedings violated the Eighth and Fourteenth Amendments of the United States Constitution because the court charged the jury that it could not be influenced by "sympathy" when answering the special issues submitted.

In point of error twelve, appellant contends that his capital punishment proceeding violated Texas constitutional protection against imposition of cruel or unusual punishment because the court charged the jury that it could not be influenced by "sympathy" when answering the special issues submitted.

Appellant in essence argues, as the majority opinion notes, that the trial court's "sympathy" charge nullified the special issue on mitigation. 912 S.W.2d 189 at 195, without any analysis, states we disagree, and hold the trial court's sympathy charged violated neither the United States nor the Texas constitutions, and cites *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) and *Wheatfall v. State,* 882 S.W.2d 829, 842–43 (Tex.Cr.App.1994), *cert. denied,* — U.S. —, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995) and overrules both points of error.

While I object to the total lack of analysis, I nevertheless agree that the majority reached the right result. In *Wheatfall supra,* we determined the constitutionality of the antisympathy charge. In doing so, we were guided by the commands of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) concerning mitigating evidence. In *Brown supra,* the U.S. Supreme Court addressed the same concerns regarding an antisympathy charge. The overriding focus of an antisympathy charge is to instruct the jury that it not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering the evidence and answering the special issues. By limiting a jury's emotional response to our special issues, a trial court limits emotional responses in favor of the defendant and in favor of the victims of the crime. The Court went on to say that it does not follow that by limiting a juror's sympathy towards the defendant the court is also limiting that jurors' consideration of evidence which may mitigate against the imposition of the death penalty. As Justice O'Connor explicated in her concurring opinion in *Brown,*

> Because the individualized assessment of the appropriateness of the death penalty is a moral inquiry into the culpability of the defendant, and not an emotional response to the *mitigating* evidence, I agree with the Court that an instruction informing the jury that they "must not be swayed by

mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" does not by itself violate the Eighth and Fourteenth Amendments to the United States Constitution.

*Wheatfall,* supra at 842.

Consequently, the majority holding that the antisympathy charge is not violative of the United States and Texas Constitutions is correct. With these comments, I join the judgment of the Court.