COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-018-CR
 
ANDREW LAFAYETTE BERTRAM, II                                                 
APPELLANT
V.
THE STATE OF TEXAS                                                                
    STATE
------------
FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
Appellant, Andrew Lafayette Bertram, II,
appeals his conviction of capital murder. In three points, Appellant complains
that: 1-2) the trial court erred in overruling Appellant's motion for an
instructed verdict because the evidence was legally and factually insufficient
to establish that the murder in this case was committed in the course of
committing a robbery; and 3) the trial court erred in denying Appellant's motion
to suppress his written statement because the statement was taken after
Appellant had invoked his right to counsel. We affirm the trial court's
judgment.
FACTS
On July 27th, 2000, police
officers and paramedics received a call from a home where an alleged suicide
attempt had occurred. Upon arriving at the home, officers found Appellant
unconscious in a bedroom. The officers attempted to wake Appellant without
success. The paramedics then arrived at the home and took over the medical
assessment of Appellant. The paramedics eventually woke Appellant up and found
that he had taken several Zantac. Appellant also had small superficial cuts on
his wrists. During the medical screening of Appellant, Appellant's sister found
an apparent suicide note. She turned the note over to officers at the scene.
Appellant had handwritten the suicide
note, and it had Appellant's social security number on it. In the note,
Appellant claimed to have killed Desmond Gibson (Gibson). Gibson allegedly sold
drugs to Appellant. Gibson's family had reported him missing a few days before
Appellant's suicide attempt. The note told police that Appellant had hidden
Gibson's body in a closet at Appellant's apartment. The officers radioed another
patrol unit to determine whether any truth existed as to Appellant's claim. The
patrol unit went to Appellant's apartment, and concerned that a person inside
the residence might need medical assistance, searched the apartment without a
warrant. The officers found Gibson's body in a guestroom closet. He appeared to
have been dead for some time.
When Gibson's body was found, police
officers at the house arrested Appellant. After Appellant's arrest, he gave a
number of statements to the police claiming that he had just gone crazy and
killed Gibson. He claimed that he had been addicted to cocaine for a number of
years, but had cleaned up for over five months. He then went out drinking one
night, relapsed, and began to purchase large sums of cocaine from Gibson.
Eventually he ran out of money and had nearly lost his job. He had called Gibson
the previous weekend to get more crack. He acknowledged that he had no money,
but wanted to purchase the crack on credit. Appellant stated that when Gibson
arrived at his apartment, he went crazy and killed Gibson shouting, "No
more drug dealers."
Based on Appellant's statements, he was
charged with capital murder. While Appellant waited for trial, he gave a number
of interviews to local newspapers. One of the reporters recorded his interview,
and the State introduced it at trial. The State also read Appellant's written
statement to the jury during trial. The jury found Appellant guilty of capital
murder. Because the State had previously decided not to seek the death penalty,
the judge sentenced Appellant to life in prison.
LEGAL AND FACTUAL
SUFFICIENCY
In Appellant's first and second points on
appeal, he claims that the evidence is legally and factually insufficient to
support his conviction. Appellant argues that the evidence at trial only
supports a conviction for murder, not capital murder. Appellant states that the
evidence offered at trial does not show that he had formed the intent to rob
Gibson before or during the murder. Because Appellant's first two points concern
the same issues and facts, we will address them together.
LEGAL
SUFFICIENCY
In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 975 (1993). The critical
inquiry is whether, after so viewing the evidence, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522
U.S. 844 (1997). This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).
In determining the legal sufficiency of
the evidence to show appellant's intent, and faced with a record that supports
conflicting inferences, we "must presume -- even if it does not
affirmatively appear in the record -- that the trier of fact resolved any such
conflict in favor of the prosecution, and must defer to that resolution." Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).
Appellant claims that the evidence must
show that he intended to rob Gibson before or during the murder and that without
evidence of this intent, the State failed to prove capital murder. See
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) ("For
murder to qualify as capital murder under section 19.03, the killer's intent to
rob must be formed before or at the time of the murder.").
The State introduced a number of
statements made by Appellant. Detective Richard Daniel Nutt interviewed
Appellant three times after his arrest. Detective Nutt testified that in the
first interview, Appellant stated that, he took Gibson's crack after he killed
him. In the third interview, Appellant gave a written statement, in which he
claimed that between the time that he had relapsed and the murder, he had spent
$1,500 on crack cocaine. Appellant told Detective Nutt that, before the murder,
he had run out of money and could think of nothing but the next hit of crack. He
stated that he had to have it. Appellant confessed that he stole three $20
pieces of crack and $184 from Gibson after he killed him.
In a recorded statement to a newspaper
journalist, Appellant gave a more detailed confession. Appellant stated that on
the day of the murder he had run out of money and planned on asking Gibson for a
loan until payday. Appellant recounted the murder in the interview, stating that
Gibson always turned his back to Appellant when he got the crack out of his
pocket. When Gibson turned his back to get the crack on the day of the murder,
Appellant attacked him. After Gibson died, Appellant used some of the crack that
he stole from Gibson. Once he had taken a hit of cocaine, Appellant then placed
Gibson's body on a blanket and dragged him into the bedroom. Appellant used more
of the crack cocaine before disposing of Gibson's car. Appellant stated in the
newspaper interview "You know, I mean, I replay in my mind over and over
and over and over, you know, I mean, why, why, why, why? For $184 and $60 worth
of cocaine."
We hold that a rational trier of fact
could have found beyond a reasonable doubt that Appellant intended to rob Gibson
before or during the murder. McDuff, 939 S.W.2d at 614. Therefore, the
evidence was legally sufficient to support Appellant's conviction for capital
murder. We overrule Appellant's first point on appeal.
FACTUAL
SUFFICIENCY
We must now determine if the evidence is
factually sufficient to support Appellant's conviction. In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996). Evidence is factually insufficient if it is so weak
as to be clearly wrong and manifestly unjust or the adverse finding is against
the great weight and preponderance of the available evidence. Johnson,
23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the verdict, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Id. In performing this review, we are to give due
deference to the fact finder's determinations. Id. at 8-9; Clewis,
922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient
only where necessary to prevent manifest injustice. Johnson, 23 S.W.3d
at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
Appellant claims that the evidence offered
to prove that he intended to rob Gibson before or during the murder was
factually insufficient. We apply the evidence we detailed in the legal
sufficiency review to determine whether the evidence was factually sufficient.
We must also review any facts that contradict the evidence used in the legal
sufficiency review.
Appellant focuses his factual sufficiency
argument on the fact that he never confessed to intending to rob Gibson before
killing him. Further, Appellant claims that no direct proof exists to show that
Appellant ever formed the intent to rob Gibson before or during the murder.
Appellant claims that the statements he gave to the police showed only that he
took the money and crack as an afterthought. Appellant claims that his
motivation for killing Gibson was that he hated him for getting him back on
crack cocaine. To support his position, Appellant points us to the fact that he
yelled "No more drug dealers" as he strangled Gibson.
The evidence also shows, however, that
Appellant had run out of money and felt like he had to have some crack cocaine.
He called Gibson and asked him to come to his apartment to deliver some crack,
which Appellant knew he could not pay for. He hoped that Gibson would loan him
some crack until he could get paid. When Gibson got to the apartment, he turned
his back to Appellant to retrieve some crack cocaine from his pocket. When
Gibson had removed some of the cocaine, Appellant attacked him with a bat. He
hit him two times in the head with the bat. Only after Appellant rendered Gibson
helpless, did he yell out the words "No more drug dealers" and
strangle him to death. Before doing anything else after murdering Gibson,
Appellant smoked some of the stolen crack. Once he smoked some of the crack
cocaine, he then hid the body and the evidence of the crime. Appellant also told
the newspaper reporter that he killed Gibson "for $184 and $60 worth of
cocaine."
The jury could have found that Appellant's
actions, lack of funds, desperation for cocaine, and statements made during the
newspaper interview showed that his principle reason for killing Gibson was to
get the cocaine. Despite the fact that Appellant never stated that he intended
to rob Gibson before murdering him, the jury could infer this intent from
Appellant's actions and words. See Conner, 67 S.W.3d at 197 ("The
jury may infer the requisite intent from the conduct of the defendant.");
Curtis v. State, 89 S.W.3d 163, 175 (Tex. App.--Fort Worth 2002, pet. ref'd)
("Intent can be inferred from acts, words, and conduct of the
accused."). The proof of guilt is not so obviously weak as to undermine
confidence in the verdict, nor is it greatly outweighed by contrary proof. Johnson,
23 S.W.3d at 11. In giving due deference to the fact finder's determinations, we
hold that the evidence was factually sufficient to support Appellant's
conviction for capital murder. We overrule Appellant's second point on appeal.
MOTION TO SUPPRESS
In Appellant's third point on appeal, he
claims that the trial court erred in denying his motion to suppress his written
statement because the police took the statement after he had invoked his right
to an attorney. In the hearing on the motion to suppress, Detective Nutt
testified about whether Appellant had invoked his right to counsel. Nutt claimed
that, during the first interview, Appellant stated "I think maybe I might
want to talk to a lawyer." Nutt, thinking that Appellant was tired, ended
the interview shortly after this statement, but asked Appellant whether he
wanted to continue the interview the following day. Appellant stated that he
did. The next day, Appellant gave a written statement to Detective Nutt in which
he acknowledged that he had the right to counsel but did not want to invoke this
right. Specifically Appellant stated that "I understand that I can speak to
an attorney before I give this statement, but I do not wish one to be
here." Appellant then confessed to Gibson's murder.
Appellant claims that he invoked his right
to counsel on the night before giving his written statement. He further states
that he did not initiate the meeting that led to him giving a written statement,
so the police violated his right to counsel by questioning him after he invoked
his right. Appellant claims that because the police violated his right to see an
attorney before questioning, the trial court should have suppressed the
statement.
Without holding that error occurred, we
will proceed to a harm analysis. See, e.g., Green v. State, 912 S.W.2d
189, 193 (Tex. Crim. App. 1995) (applying the applicable harm analysis without
holding that the trial court erred). Exclusionary rules are constitutionally
based and a reviewing court must, therefore, apply rule 44.2(a). Hernandez
v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Rule 44.2(a) states
that in constitutional challenges subject to a harm analysis, "the court of
appeals must reverse a judgment of conviction or punishment unless the court
determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment." TEX. R. APP. R. 44.2(a). Under rule 44.2(a), an
appellate court may affirm the trial court's judgment in the face of
constitutional error if (1) concrete evidence exists in the record on which the
appellate court can meaningfully gauge or quantify the harm caused by the trial
court's error, and (2) the reviewing court determines beyond a reasonable doubt
that the error did not contribute to the conviction or punishment. Casias v.
State, 36 S.W.3d 897, 900 (Tex. App.--Austin 2001, no pet.).
The record shows that Appellant's written statement was cumulative to another
verbal statement Appellant gave to a reporter. The State played the hour long
verbal statement to the jury during trial. The verbal statement was longer in
duration and more detailed than the complained of written statement. We have
held that the wrongful admission of cumulative evidence is considered harmless. See
Franks v. State, 90 S.W.3d 771, 805-06 (Tex. App.--Fort Worth 2002, no
pet.) (holding that because the complained-of testimony was generally cumulative
of other evidence introduced in the case, no harm attached); Mack v. State,
928 S.W.2d 219, 225 (Tex. App.--Austin 1996, pet. ref'd) (holding error is not
reversible "if other evidence at trial is admitted without objection and it
proves the same fact or facts that the inadmissible evidence sought to
prove").
Further, the State provided overwhelming evidence of Appellant's guilt at
trial. See Motilla v. State, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002)
(holding that "in a harm analysis under Rule 44.2(a), 'the presence of
overwhelming evidence supporting the finding in question can be a factor in the
evaluation of harmless error'"). At trial, the State introduced testimony
from Detective Nutt regarding Appellant's first oral confession. In that
confession, Appellant told Detective Nutt that he took Gibson's crack after he
killed him. The State also introduced Appellant's written suicide note taking
credit for Gibson's murder. The note told police where to find Gibson's body and
that Appellant was sorry for killing Gibson. Appellant further granted two oral
interviews to journalists, and the State played one of the interviews to the
jury. In that interview, he admitted to the murder and stated his possible
motivations for killing Gibson. Even without Appellant's written statement,
there was an overabundance of evidence proving that Appellant killed Gibson with
the intent to rob him.
We hold that the overwhelming evidence of Appellant's guilt added with the
fact that the complained of statement was cumulative to other evidence
introduced at trial makes any error harmless beyond a reasonable doubt. Casias,
36 S.W.3d at 900. We overrule Appellant's third point.
CONCLUSION
Having overruled all of Appellant's points on appeal, we affirm the trial
court's judgment.
                                                                  
SAM J. DAY
                                                                  
JUSTICE
PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 8, 2003