**Affirmed and Opinion filed May 19, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00039-CR

**SHERILL ANN SMALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 20th District Court**
**Milam County, Texas**
**Trial Court Cause No. CR24,066**

## O P I N I O N

A jury convicted appellant Sherill Ann Small of capital murder. Because the State did not seek the death penalty, punishment was assessed at a mandatory term of life imprisonment without the possibility of parole. *See* Tex. Penal Code § 12.31(a)(2). In two issues, appellant contends that the trial court erred by limiting the testimony of her expert witness and by failing to read its response to a jury note in open court as required by Article 36.27 of the Texas Code of Criminal

Procedure. We affirm.[1]

**BACKGROUND**

A grand jury indicted appellant for capital murder, alleging that on or about July 29, 2013, she "intentionally or knowingly cause[d] the death of . . . [A.H.], by blunt force trauma to the head, and the said [A.H.] was then and there an individual under ten years of age." A.H., a two-year old child, had been placed in foster care in appellant's home. Although appellant's story varied, she ultimately testified that A.H. was injured twice on the date in question: once when she fell while playing "Ring around the Rosie" with appellant, and again when appellant dropped A.H. while swinging her in the air. Appellant stated that when she dropped A.H., the child stopped breathing. After responding to appellant's 9-1-1 call, paramedics transported A.H. to the hospital, where she died a few days later.

At appellant's trial, the jury heard testimony from many witnesses, including first responders, A.H.'s treating physicians, and members of appellant's family. Additionally, the State called Dr. Barnard, the Chief Medical Examiner for Dallas County who performed A.H.'s autopsy. Dr. Barnard testified that he is the director of the Southwestern Institute of Forensic Sciences, is board-certified in both pathology and forensic pathology, and has performed approximately 7,000 autopsies. Dr. Barnard's autopsy revealed five areas of bruising to A.H.'s head, as well as a subdural hemorrhage. Dr. Barnard stated that his "ultimate determination was that [A.H.] died as a result of blunt force injuries" to her head and abdomen. According to Dr. Barnard, A.H.'s death was a homicide.

The State also presented testimony from Dr. Edwards, a physician who is

---

[1] This case was transferred to our court from the Third Court of Appeals in Austin; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

2

board-certified in child abuse pediatrics. Dr. Edwards formerly served as director of the pediatrics residency program at Dell Children's Medical Center in Austin, Texas. He currently works as an associate professor of pediatrics and as a consultant in child abuse pediatrics. Dr. Edwards stated that he was asked by CPS to review the case and determine whether there was evidence of child abuse. After reviewing A.H.'s records, he concluded that "there was substantial evidence of physical abuse."

Appellant's expert witness was Dr. Steven Yount, a board-certified family practitioner. Appellant called Dr. Yount to testify regarding his interpretation of certain medical evidence, including A.H.'s medical records, autopsy, and death certificate. Dr. Yount also attempted to testify about scientific studies supporting the defense's theory that A.H.'s injuries resulted from an accidental, short-distance fall. The State objected, arguing that Dr. Yount was not qualified to give such testimony. The trial judge initially sustained the State's objection, and a discussion between appellant, the State, and the trial judge ensued. Appellant argued that Dr. Yount was qualified and that limiting his testimony would infringe upon appellant's right to present an adequate defense.[2] The trial judge was ultimately unpersuaded, stating:

> Well, as I said before the break, I'm going to allow him to testify about things in—in his personal experience and background, practice, so on and so forth. I think that's fair game. But to wander farther afield than that, again, to get into the entire medical universe is—that's too far of a stretch.

Later, appellant submitted a written proffer of evidence, which the trial court accepted.

After hearing from the witnesses, the jury retired to deliberate. The jury

---

[2] On appeal, appellant's arguments only concern Dr. Yount's qualifications.

deliberated for about three hours before the foreman sent a note to the judge indicating that the vote was 11 to 1. After discussing the proper response with the attorneys for both sides, the judge read his response to the attorneys and sent it in to the jury. The trial judge's note stated: "continue to deliberate." Appellant argues that the judge later sent the jury an *Allen* charge[3] after receiving a second note that the vote remained 11 to 1. Ultimately, the jury was able to reach a unanimous guilty verdict, and appellant was sentenced to life without parole. She appeals.

**ISSUES AND ANALYSIS**

## I.     Limitation of Dr. Yount's Testimony

Appellant first contends that the trial court abused its discretion in limiting Dr. Yount's testimony to matters within his "actual personal practice experience." According to appellant, "[t]he excluded testimony covered interpretations of expert journal articles or studies tending to show that, when applied to the facts of Appellant's case, this incident could have been an accident rather than a murder." Specifically, appellant argues that Yount was qualified by "knowledge, skill, experience, training, or education" to give these opinions.

Appellant submitted a proffer of evidence listing points Dr. Yount would have made had he been permitted to testify. *See* Tex. R. Evid. 103(a)(2). According to the proffer, Dr. Yount would have "pointed out" the following:

1. A portion of the autopsy report noting that sections of parts of the brain "fail[ed] to demonstrate axonal spheroids of the type that characterize traumatic axonal injury; there is immunoreactivity in white matter of the dorsolateral pons that probably represents ischemic damage"—evidence which Dr. Yount states "fail[ed] to demonstrate traumatic forces high enough to do this type of damage in the brain";

---

[3] *Allen v. United States*, 164 U.S. 492 (1896).

4

2. The "[d]isconnect between the testimony that the subdural hematoma was not a big deal in [A.H.'s] death . . . and the Abstract of the Death Certificate which states the 'Immediate Cause of Death' is Subdural Hematoma";

3. Findings indicating that injuries to A.H.'s chin and scalp "were old, potentially from one of the earlier falls";

4. Although the ophthalmologist opined that A.H.'s retinal hemorrhages were "consistent with nonaccidental head trauma," the ophthalmologist also noted that "one thing that should be ruled out is . . . elevated intracranial pressure could be a cause of this";

5. A 2012 study entitled "Prevalence of Retinal Hemorrhage in Critically Ill Children";

6. The 2001 Plunkett study regarding short distance falls;

7. A.H.'s liver lacerations could have reasonably resulted from the administration of CPR; and

8. The total blood volume in a 30-pound child should be around 1200 milliliters, a unit of whole blood is 450–500 milliliters, and one unit of packed red blood cells is about 250 milliliters.

We first address whether appellant's proffer preserved any error for our review.

## A. Preservation of Error

To adequately and effectively preserve error in a trial court's exclusion of evidence, the substance of the excluded evidence must be shown by an offer of proof unless it is apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2); *Fox v. State*, 115 S.W.3d 550, 558–59 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The purpose of the offer of proof is to show what the witness's testimony would have been; otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling. *Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 866 (1985); *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Error may be preserved by an

offer of proof in question and answer form or in the form of a concise statement by counsel. Tex. R. Evid. 103(b); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Counsel's concise statement must include a summary of the proposed testimony. *Warner*, 969 S.W.2d at 2. Error is not preserved if the offer of proof is inadequate. *Id.*

After reviewing appellant's proffer, we conclude that it is insufficient to preserve appellant's complaint for our review. The proffer does not contain any information regarding Dr. Yount's specific qualifications to testify and does not state any opinions that he would have given. *See Alberts v. State*, 302 S.W.3d 495, 509–10 (Tex. App.—Texarkana 2009, no pet.) (holding that error was not preserved when defendant elicited testimony about expert's qualifications but did not elicit testimony about the substance of the expert's opinion); *Lavoie v. State*, No. 02-14-00333-CR, 2015 WL 5108854, at *5 (Tex. App.—Fort Worth Aug. 28, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that defendant did not preserve error when testimony elicited from expert concerned expert's qualifications and general topics of his proposed testimony, but not his specific opinions).

Appellant's proffer simply lists eight items Dr. Yount "would have pointed out"—his musings about certain facts in A.H.'s medical records and autopsy report, as well as the results of two medical studies. The proffer does not explain Dr. Yount's basis of knowledge for these statements, and it does not explain how any of Dr. Yount's proposed testimony would aid the jury. *See* Tex. R. Evid. 702 (expert witness may testify in the form of an opinion if expert's scientific, technical, or otherwise specialized knowledge will help trier of fact understand the evidence or determine a fact in issue). Appellant's proffer states that Dr. Yount reviewed medical records, "reviewed accepted medical literature that concerned

issues he saw in the case," "consulted with other experts on medical issues[,] and reached medical conclusions on which to testify pursuant to Rule 702"; however, the proffer does not identify what these issues are or what conclusions Dr. Yount reached. On this record, we cannot determine whether the trial court erred in limiting Dr. Yount's testimony. *See Warner*, 969 S.W.2d at 2. We therefore conclude that appellant's proffer did not preserve his complaint for our review.

### B. Rule 44.2(b) Harm Analysis

Even if appellant had properly preserved her complaint regarding Dr. Yount's testimony for review, we conclude that no harm resulted from the trial court's ruling. *See* Tex. R. App. P. 44.2(b). In conducting an analysis under Rule 44.2(b), we examine the entire proceeding to determine whether the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

A review of the record reveals that Dr. Yount testified in support of appellant's theory of the case and was ultimately allowed to give his opinion that A.H.'s death was accidental. According to appellant, A.H.'s injuries occurred when she accidentally dropped A.H., not from any intentional conduct. Dr. Yount stated that he had examined appellant and reviewed her medical records, and he noted that appellant had injured her left wrist a year before A.H.'s death. According to Dr. Yount, appellant subsequently developed a condition that caused tendons in her wrist to "freeze up." Dr. Yount testified that although appellant had two surgeries and received physical therapy, her grip pressure in her left arm was much lower than in her right arm. Dr. Yount opined that "these findings are consistent with [appellant's] report that she lost her grip on the child during play." Dr. Yount then gave the following testimony on cross-examination:

Q: Okay. Let's—let's talk about some of your—your testimony here.

Basically, the—the gist of your testimony in regard to the death of the child was that it was a tragic accident. Is that basically your—your testimony, the gist?

A: That is a very reasonable consideration that that is what happened, yes.

Q: Okay. Yes or no, that's—that's a fair question. That basically the bottom line is, it wasn't a homicide, it was a tragic accident?

. . .

A: A—a tragic accident is a real possibility, perhaps even a probability.

As Dr. Yount was permitted to provide his ultimate opinion that A.H.'s death was accidental, we fail to see how the trial court's limitation of Dr. Yount's testimony harmed appellant. The significance of what Dr. Yount was trying to convey to the jury—namely, that A.H.'s death was an accident—was in fact conveyed to the jury by his subsequent testimony. *See Easterling v. State*, 710 S.W.2d 569, 574 (Tex. Crim. App. 1986), *cert. denied*, 479 U.S. 848 (1986); *Mowbray v. State*, 788 S.W.2d 658, 668 (Tex. App.—Corpus Christi 1990, pet. ref'd), *cert. denied*, 498 U.S. 1101 (1991). We overrule appellant's first issue.

## II.    Trial Court's Failure to Comply with Article 36.27

In her second issue, appellant argues that the trial court committed reversible error when it failed to read its response to a jury note in open court as required by Article 36.27 of the Code of Criminal Procedure.[4] According to appellant, the trial

---

[4] Article 36.27 provides:

When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are

judge responded to two notes from the jury. A discussion of the first note appears in the reporter's record. The first note stated: "We have a vote of 11-1." Although the judge wanted to send an *Allen* charge in reply, the parties agreed that "continue to deliberate" was more appropriate. The judge then sent such a response to the jury. The next event on the record is the reading of the verdict. The reporter's record makes no mention of the court's receipt of a second note or of a second response. However, the clerk's record contains another juror note stating "the vote is 11-1," as well as a typewritten *Allen* charge signed by the judge. The record is silent as to when and how this second note was presented to the jury. Nothing in the record reflects that appellant objected to the trial court's answer to the second note. The record is also silent as to when appellant became aware of the second jury note and the court's response.

## A. Appellant's Failure to Object

Appellant argues that the trial court did not read the *Allen* charge to the jury in open court as required by article 36.27. Appellant concedes that the record contains no objection from appellant; however, she argues that an objection was not required pursuant to *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). In *Marin*, the court considered whether a trial court's violation of article 1.051(e) of the Texas Code of Criminal Procedure, allowing appointed counsel ten

---

submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. *The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.*

All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

Tex. Code Crim. Proc. art. 36.27 (emphasis added).

9

days of trial preparation, could be raised for the first time on appeal. 851 S.W.2d at 277. In answering that question affirmatively, the court established three categories of rights: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." 851 S.W.2d at 279. The *Marin* court concluded that the right established by article 1.051(e) belonged in the second category. *Id.* at 280. These rights cannot be forfeited by inaction alone, but must be expressly relinquished by the defendant. *Id.* at 278–79. The *Marin* court looked to the language of article 1.051(e), which states: "[a]n appointed counsel is entitled to 10 days to prepare for a proceeding *but may waive the preparation time with the consent of the defendant in writing or on the record in open court*." Tex. Code Crim. Proc. art. 1.051(e) (emphasis added). The court concluded that the statute "clearly does not contemplate a forfeiture of the statutory right from a mere failure to object at trial." *Marin*, 851 S.W.2d at 280.

Appellant contends that the right to have the trial court's response to a jury note read in open court also belongs in the second category. She notes that article 36.27 contains language similar to the statute at issue in *Marin*. *See* Tex. Code Crim. Proc. art. 36.27 (stating that "[t]he written instruction or answer to the communication shall be read in open court *unless expressly waived by the defendant*) (emphasis added). However, even if we classify the right at issue here as a waivable-only right, we cannot sustain appellant's second issue.

**B. Silent Record Presumption**

Appellant asks us to infer that because the trial court's otherwise detailed docket sheet does not make reference to a second note, it must not have been read in open court. She contends that "[i]t is highly unlikely that the judge would neglect to enter on his docket sheet the precise time he brought the jury back into

10

the courtroom to read the *Allen* charge to them." But this court cannot decide cases based on speculation about matters not shown on the record, *see Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995), or based on assumptions and estimates about the record. *Jenkins v. State*, 912 S.W.2d 793, 821 (Tex. Crim. App. 1993). "In the absence of a showing to the contrary in the record, we presume the trial court's response was in open court and in appellant's presence." *Green*, 912 S.W.2d at 192. *See also Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006) (affirming *Green*). We also presume appellant had an opportunity to object and that she agreed to the trial court's response. *See Green*, 912 S.W.2d at 192–93. Without more information in the record, we cannot determine that the trial court's actions were in violation of article 36.27. We overrule appellant's second issue.[5]

## CONCLUSION

We affirm the decision of the trial court.

/s/     Ken Wise
         Justice

Panel consists of Justices Jamison, McCally, and Wise.
Publish — TEX. R. APP. P. 47.2(b).

---

[5] The State argues that appellant's second issue should be overruled because appellant has failed to show harm. Because we presume that appellant waived any objection to the trial court's response to the jury note, *see Green*, 912 S.W.2d at 192, we need not address whether appellant was required to show harm.