IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






AP-74,984






ANTHONY QUINN FRANCOIS, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM CAUSE NO. 961278 IN THE 339TH DISTRICT COURT

HARRIS COUNTY





 

 COCHRAN, J., delivered the opinion of the unanimous Court.



O P I N I O N



 Appellant was convicted in July 2004 of capital murder. (1) The State's evidence at the
guilt stage showed that appellant became jealous of the interest that his teen-age girlfriend,
Shemika, showed in another boy. He walked into Shemika's home at 2:00 a.m. one night
with a gun, and confronted her mother, Sheila, in her bedroom. When Sheila ran screaming
into the bedroom of her four daughters, appellant followed. He shot and killed Shemika's
two youngest sisters, Ashley and Brittany, in their top bunk bed; he shot and killed her
younger sister, Naikeshia, in another bed, and he shot-but did not kill-both Sheila and
Shemika. 

 Based on the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure Article 37.071, sections 2(b) and 2(e), the trial court sentenced appellant to death. (2) 
Direct appeal to this Court is automatic. (3) After reviewing appellant's sixteen points of error,
we find them to be without merit. Consequently, we affirm the trial court's judgment and
sentence of death. 

I.


Challenges to the Constitutionality of the Texas Death-Penalty Statute


 In points of error one through six, appellant raises various challenges to Article
37.071. In his first point of error, he alleges that this statute violates the Eighth Amendment
because it "fails to require that the [S]tate prove, beyond a reasonable doubt, that there is an
absence of a circumstance that would justify a life sentence." Appellant cites Ring v.
Arizona, (4) and Apprendi v. New Jersey. (5) We have previously held that Ring and Apprendi do
not require the State to bear the burden of proving beyond a reasonable doubt that the
mitigation issue should be answered in the negative. (6) Appellant has not persuaded us that
our prior holding is wrong. Point of error one is overruled.

 In point of error two, appellant claims that the trial court erred when it denied his
motion to preclude the death penalty as a sentencing option. Citing Bush v. Gore, (7) he
complains that Article 37.071 "fails to provide a method by which the [S]tate determines the
death-worthiness of the defendant" and that "[t]he decision as to which defendant is to be
subjected to the death penalty varies from county to county." We have previously addressed
and rejected such claims. (8) Appellant has not persuaded us that our prior holdings are wrong. 
Point of error two is overruled.

 In point of error three, appellant complains that the trial court improperly denied his
motion to declare the Texas death-penalty statute to be unconstitutional due to the jury's
"inability to predict future dangerousness." We have previously rejected this contention. (9) 
Appellant has not persuaded us that our prior holdings are wrong. Point of error three is
overruled.

 In point of error four, appellant claims that the trial court violated his federal and state
constitutional rights when it denied his "Motion to Declare the Texas Capital Sentencing
Scheme Unconstitutional and Motion to Preclude Imposition of the Death Penalty." (10) 
Appellant argued in his motion: (1) the mitigation special issue is unconstitutional because
it fails to place the burden of proof on the State regarding aggravating evidence; (2) the
mitigation special issue is unconstitutional because it permits the very type of open-ended
discretion condemned by the United States Supreme Court in Furman v. Georgia; (11) (3)
Article 37.071 is unconstitutional because it does not permit meaningful appellate review;
(4) the definition of "mitigating evidence" is unconstitutional because it limits the concept
of mitigation to factors that render a capital defendant less morally blameworthy for
commission of the capital murder; (5) capital punishment as administered in Texas amounts
to cruel and unusual punishment, according to Justice Blackmun's dissent in Callins v.
Collins; (12) (6) the "10-12 provision" in Article 37.071 violates the constitutional principles
discussed in Mills v. Maryland, (13) and McKoy v. North Carolina; (14) and, (7) Article 37.071 is
unconstitutional because of its failure to inform the jury that a single holdout juror on any
special issue results in a life sentence. It is also without merit, because we have previously
addressed and rejected each of these claims and appellant has not persuaded us that our prior
holdings are wrong. (15) Point of error four is overruled.

 In point of error five, appellant contends that the trial court erroneously denied his
motion to hold Article 37.071 unconstitutional on the basis that it impermissibly shifts the
burden of proof on mitigation to the defendant and provides no guidance to the jury. We
have previously held these claims to be without merit. (16) Appellant has not persuaded us that
our prior holdings are wrong. Point of error five is overruled.

 In point of error six, appellant argues that the trial court erroneously overruled his
motion to preclude the State from seeking the death penalty. Appellant asserts that "[i]n
view of the many different capital sentencing schemes that have been in operation in Texas
in the post-Furman era, the Texas death penalty has been arbitrarily imposed and, thus, is
unconstitutional under the 8th and 14th Amendments." Again, this Court has previously
addressed and rejected this contention, (17) and appellant fails to persuade us of the
incorrectness of our prior holdings. Point of error six is overruled. 

II.


Evidentiary Issues


 In four points of error, appellant challenges various rulings by the judge during the
course of the trial. In point of error seven, appellant contends that the trial court
erroneously denied his motion for a mistrial during the punishment phase "when the State
improperly posited through a question that appellant confessed to participating in an
[extraneous] aggravated robbery." We stated in Ladd, "The asking of an improper question
will seldom call for a mistrial, because, in most cases, any harm can be cured by an
instruction to disregard. A mistrial is required only when the improper question is clearly
prejudicial to the defendant and is of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors." (18) We review a trial court's
denial of a mistrial under an abuse of discretion standard. (19) 

 Defense counsel called witness Jadon West to testify at the punishment phase of the
trial. West testified that he pleaded guilty to the aggravated robbery of Yvette Zachary and
went to prison for the crime in May 1991. He testified that he and appellant robbed Zachary
because she failed to pay them the $3,000 she owed them for transporting drugs for her. He
testified that a third man named "Black" accompanied them during the robbery, and "Black"
was the only person who had a gun. Appellant complains about the following exchange
between West and the prosecutor:

[PROSECUTOR]: All right. Did you know that [appellant] confessed to
participating in the aggravated robbery?


[WEST]: What did he confess to?


[PROSECUTOR]: [Appellant] - -


 [DEFENSE COUNSEL]: Your Honor, I would object to that. At no
time did he ever confess, that I'm aware of, to committing an aggravated
robbery.


 THE COURT: Approach the bench.


 [DEFENSE COUNSEL]: I would ask that the jury be instructed to
disregard that.


 THE COURT: The jury is instructed to disregard that at this juncture
and not consider it for any purpose. Approach the bench, please.


 [DEFENSE COUNSEL]: And, further, we ask for a mistrial.


 THE COURT: That's denied.

 

 The trial court did not abuse its discretion in denying a mistrial. Before the prosecutor
asked the question, West had already testified that appellant was a participant in the robbery. 
Prior to West's testimony, Zachary also testified that she was robbed at gunpoint by West and
two other men, and she identified appellant in court as one of the robbers. The trial court
could have reasonably concluded that any potential harm from the prosecutor's question
could be cured by the instruction to disregard. Point of error seven is overruled.

 In point of error eight, appellant argues that the trial court erroneously permitted
Michelle Antoinette Brothers Frank to give speculative testimony at punishment about
Shemika's nightmares after the triple murder. (20) 

 The prosecutor, outside the presence of the jury, stated that she intended to present in
rebuttal the victim impact testimony of Ms. Frank, the woman with whom Shemika had been
living since the shootings. The prosecutor stated that she expected Ms. Frank to testify that
Shemika suffered from nightmares after her sisters' deaths. Defense counsel argued that Ms.
Frank's testimony "calls for a conclusion on the part of this witness that she's not qualified
to make." Ms. Frank testified on voir dire examination by defense counsel about her
observations of Shemika's nightmares. The trial court ruled the testimony admissible, over
defense counsel's objection that it was "speculative," that there was "no way to know" what
Shemika was dreaming about, and that Ms. Frank had "no training . . . to make that
interpretation." (21) 

 Ms. Frank testified in the presence of the jury that Shemika came to live with her and
her family after the shootings. She further testified as follows:

[PROSECUTOR]: And I want to talk with you very briefly about the changes
that you've seen in Shemika since she got out of the hospital since this offense
occurred.


[Frank]: Okay.


[PROSECUTOR]: Can you tell the jury, please, during the nighttime is there
anything that happens?


[Frank]: She has nightmares. She screams. She cries. She - - once before she
screamed out, "Make him stop. Please make him stop." She screamed out,
"Nana, move. Nana, move."


[PROSECUTOR]: Who's Nana?


[Frank]: Nana is a short name for Naikeshia.


[PROSECUTOR]: So, "Nana, move"?


[Frank]: "Nana, move. Nana, move."


 * * *


[PROSECUTOR]: Tell the jury how you would find her.


[Frank]: She would be - - she slept in the bottom of a twin bed. The twin bed
was - - is a full-sized bed. She would be balled up, pulling the cover tightly,
I guess, so no one could pull it off her. But I would pull and Dante would pull
and finally we would get her to release it and she would be in tears.


 And we would have to kind of, like, I shake her to wake her up. And
once she wake up, I would let her know that, "I'm here for you. It's going to
be all right. Just hold on, baby."


[PROSECUTOR]: Tell the jury once you wake her up how did she react? 
You said she was tearful. Once she is awake, what happens?


[Frank]: She tends to, like - - one time before she would kind of, like 

- - the bed is against the wall. One time before she would, like, go in the
corner of the bed where she [was] at and I would have to climb up on there and
I would talk to her. And we can, you know, talk to her, me and Dante. And
one time before, Dante and me - - and I would try to talk her from coming out
of that corner of the bed.


 Rule 701 of the Texas Rules of Evidence, entitled "Opinion Testimony By Lay
Witnesses," provides:

If the witness is not testifying as an expert, the witness' testimony in the form
of opinions or inferences is limited to those opinions or inferences which are
(a) rationally based on the perception of the witness and (b) helpful to a clear
understanding of the witness' testimony or the determination of a fact in issue.


"Perceptions refer to the witness's interpretation of information acquired through his or her
own senses or experiences at the time of the event (i.e., things the witness saw, heard,
smelled, touched, felt, or tasted)." (22) The witness must personally observe or experience the
events about which he or she is testifying. (23) 

 Ms. Frank testified that she personally saw Shemika screaming and crying in her sleep
and cowering under the covers at the corner of her bed. She personally heard her scream,
"Make him stop," and "Nana, move." Ms. Frank's testimony was factual, not speculative. 
Her testimony that Shemika was having nightmares was rationally based on her observations. 
Ms. Frank's testimony was also helpful to the determination of the mitigation issue. Victim
impact evidence is admissible, "in the context of the mitigation special issue, to show the
uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's
mitigating evidence. (24) Here, of course, Shemika was not only the sister of the three dead
girls, she was also a direct victim of appellant's conduct: he shot her in the side before he
killed her sisters, and then he shot her in the face after he killed her sisters, telling her that
if he couldn't have her, then nobody was going to have her. Ms. Frank's testimony was
relevant under Rules 401-403 and admissible under Rule 701. Point of error eight is
overruled.

 In points of error fourteen and fifteen, appellant claims that the trial court erroneously
permitted Rudy Leon Chevalier to testify at punishment about an unadjudicated extraneous
offense. Chevalier testified that, four days after appellant had sexually assaulted his
stepdaughter, LaKeyda Patterson, he went over to Sheila Patterson's house and saw appellant
and Shemika standing outside. As Chevalier approached the house, appellant, who was
standing about twenty feet away, said, "Hey, Rudy, come here." Chevalier saw that appellant
had a gun in a black bag, so he continued to walk to the front door, spoke briefly with Sheila,
and then left. Chevalier testified that he "felt threatened" during the encounter. 

 Appellant complains that the State failed to give him notice that Chevalier had
observed appellant with a gun. (25) He claims that the State failed to inform him of "the
offense, the name of the witness testifying to the offense[,] or the date of the alleged
extraneous offense." Applicant relies on Article 37.07, § 3(g), (26) which is not applicable to
the punishment stage of a capital murder trial. (27) The appropriate governing provision is
Article 37.071, which does not contain a notice provision. (28) Only after a showing of unfair
surprise will proof of unadjudicated extraneous offenses at the punishment stage of a capital
case be inadmissible. (29) 

 When the parties discussed this matter outside the presence of the jury, the State
argued that it had provided appellant with written notice of its intent to introduce evidence
that "[p]ursuant to a continuing course of criminal conduct, beginning on or about January
1, 1984, and continuing through to September 11, 2003, in Harris County, Texas, the
defendant intentionally and knowingly carried about his person a handgun." Defense counsel
complained that "there's certainly a requirement that the notice be more specific than some
time during a 19-year-nine-month period he had a handgun on him." The trial court pointed
out that there was "a subpoena issued for Mr. Chevalier in this instance and the defense had
notice that he was, in fact, subpoenaed as a witness." The trial court also pointed out that the
State had already made a proffer of the evidence at issue:

 THE COURT: No. There was a proffer - - if you'd like for her to
check - - there was a proffer that the uncle went over - - 


 [PROSECUTOR]: The stepfather.


 THE COURT: I'm sorry. The stepfather went over to and - - to
confront him. I'll double-check, but I don't think I would have known about
this in advance unless somebody had made the proffer.


 * * *


 (Break in testimony to allow court reporter to review record.)


 THE COURT: Let the record reflect that a proffer was, in fact, made
concerning Mr. Chevalier. The Court, looking at the courtesy copy of
punishment notice which characterized it as an aggravated assault, referred to
it as an aggravated assault.


 Clearly the evidence does not show it was a felony [aggravated assault],
but a misdemeanor carrying a weapon despite the fact that Mr. Chevalier may
have felt intimidated. So, the Court finds that notice was given at about a
quarter until 12:00 as I recall with respect to Mr. Chevalier's testimony in
connection with Ms. Patterson's alleged assault.


The trial court also ruled that defense counsel waived his complaint because he failed to
object when the State made its earlier proffer of evidence.

 Appellant argues on appeal that "[t]here is nothing in the record that supports the trial
court's position that a proffer was made that Rudy Chevalier was going to testify that he was
the victim of an aggravated assault or that he saw appellant carrying a weapon." However,
he failed to object when the trial court took this position. Further, the record reflects that the
trial court made the following remarks during a recess earlier that day:

 THE COURT: Let the record reflect that additional proffers have been
made with respect to the - - an alleged sexual assault, April 20th, 2002, and an
aggravated assault, April of 2002. I believe those are the remaining two
instances of extraneous and unadjudicated conduct that the State intends to
offer.


 The Court having heard the proffer rules that they will be admissible. 
Certainly the Defense will have adequate opportunity to vigorously cross-examine the alleged complainant.


Thus, the record reflects that the State made a proffer of evidence pertaining to "an alleged
sexual assault" and "an aggravated assault" in April 2002, although the specific contents of
the proffer are not contained in the record.

 The State provided a general written notice that appellant "intentionally and
knowingly carried about his person a handgun" between January 1, 1984, and September 11,
2003. Chevalier was a subpoenaed witness, and the trial court determined that the State had
made a proffer of evidence regarding his testimony. Accordingly, the trial court did not
abuse its discretion in allowing Chevalier to testify. (30) 

 Even if we were to assume error, appellant was not harmed by the admission of
Chevalier's testimony. (31) In addition to the triple murder and appellant's prior convictions
for burglary of a habitation, carrying a weapon, evading arrest, possession of a controlled
substance, robbery, and unauthorized use of a motor vehicle, and his unadjudicated sexual
assault of LaKeyda Patterson, the State introduced evidence that appellant had carried a gun
and had threatened people with it on several other occasions. Points of error fourteen and
fifteen are overruled.

III.


Judicial Bias Claim


 In points of error nine and ten, appellant complains that the trial court commented
on the weight of the evidence and demonstrated a bias in favor of the State during the
prosecutor's questioning of LaKeyda Patterson at the punishment phase of the trial. Defense
counsel asked LaKeyda on cross-examination if she had seen Shemika holding a gun during
an argument with appellant. The prosecutor then asked LaKeyda about the incident:

[PROSECUTOR]: Were they having a good conversation? What was going
on?


[LAKEYDA]: I'm not sure what kind of conversation.


 [DEFENSE COUNSEL]: Then it would be speculation, Your Honor.


 [PROSECUTOR]: I'll reword, Judge.


[PROSECUTOR]: Based on the body language that you saw out there, were
they doing okay together or were they not?


 [DEFENSE COUNSEL]: Again, speculation, Your Honor.


 THE COURT: Why don't you ask her about her observations?


[PROSECUTOR]: Based on your observations of [appellant] and Shemika
when you looked out the window, were you able to determine what was going
on?


[LAKEYDA]: It looked like a slight argument and then make up.


[PROSECUTOR]: All right. So, there's an argument and at some point you
see [appellant] with his gun; is that correct?


[LAKEYDA]: Yes.


[PROSECUTOR]: And then Shemika takes it away from him?


[LAKEYDA]: Yes.


Appellant argues that the trial court "injected its own solution to the problem the State was
having in forming the correct question to ask the witness," and thus, "gave the appearance
to the jury that the trial court was coaching the State in the prosecution of its case." 
Appellant asserts that "the trial court appeared to the jury to be commenting on the
importance of the testimony to be elicited by the prosecutor by suggesting a way that the
prosecutor could, within the rules of evidence, bring that testimony before the jury." 
Appellant complains that this denied him due process and a fair trial under the Fifth, Sixth,
and Fourteenth Amendments to the United States Constitution, denied him an impartial jury
and due course of law under Article I, §§ 10 and 19 of the Texas Constitution, and violated
Article 38.05.

 Appellant acknowledges that he failed to object to the trial court's question, but
argues that no objection was required because the question constituted fundamental error. 
Appellant cites Blue v. State. (32) In Blue, the trial court stated at the beginning of jury
selection that the defendant had seriously considered entering into a plea bargain and that
the trial court would have preferred that the defendant plead guilty. (33) A plurality of this
Court concluded that the comments of the trial court, which tainted the defendant's
presumption of innocence in front of the venire, were fundamental error of constitutional
dimension and required no objection. (34) In the present case, unlike Blue, the trial court asked
the question at the punishment phase of the trial, after the jury had already found appellant
guilty of capital murder. The trial court's question (assuming it was improper at all) (35) did
not rise to such a level as to bear on the presumption of innocence or vitiate the impartiality
of the jury. (36) Because appellant failed to object to the trial court's question, he forfeited his
right to complain on appeal. (37) Points of error nine and ten are overruled.




IV.

Jury Instruction Claims


 In points of error eleven and twelve, appellant argues that the trial court erred "when
it instructed the jury to use two different standards of proof in the jury's consideration of
extraneous offenses." He asserts that, as a result, he was denied due process, due course of
law, and a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United
States Constitution, and Article I, §§ 10, 13, and 19 of the Texas Constitution. 

 The trial court instructed the jury regarding extraneous offenses in pertinent part:

 You may consider evidence of an extraneous crime or bad act in
answering the special issues even if the defendant has not yet been charged
with or finally convicted of the crime or act. However, you may consider such
evidence only if the extraneous crime or bad act has been shown by the State
beyond a reasonable doubt to have been committed by the defendant.


 All persons are presumed to be innocent of extraneous offenses or
misconduct and no person may have proof of extraneous offenses or
misconduct used against them at the punishment phase of a capital murder case
unless each element of the extraneous offense or misconduct is proved beyond
a reasonable doubt . . . The presumption of innocence alone is sufficient for
you to find that the defendant did not engage in the extraneous offense or act
of misconduct that has been placed in evidence unless the jurors are satisfied
beyond a reasonable doubt of the defendant's guilt or responsibility therefor
after careful and impartial consideration of all the evidence in the case.


 Therefore, if you find and believe beyond a reasonable doubt that the
defendant committed an extraneous crime or bad act, then you may consider
such evidence in answering the special issues. However, if you have a
reasonable doubt that the defendant committed an extraneous crime or bad act
then you may not consider such evidence in answering the special issues.


 You are further instructed that if there is any evidence before you in this
case regarding the defendant's committing an alleged offense other than the
offense alleged against him in the indictment in this case, you cannot consider
such evidence for any purpose unless you find and believe by clear evidence
that the defendant committed such other offense, if any, and even then you
may only consider the same in determining the answers to the special issues.


Appellant complains that "the trial court's instructions gave the jury two mutually exclusive
standards of proof to be used in evaluating the evidence of extraneous offenses: 1) beyond
a reasonable doubt; and, 2) by clear evidence." He asserts that the charge "misguided the
jury in how the jury should weigh extraneous offense evidence introduced by the State, as
the 'clear evidence' instruction lowered the standard of proof which enured to the benefit
of the State."

 The trial court did not instruct the jury on two conflicting standards of proof. We
have interpreted "clear proof" to mean proof beyond a reasonable doubt. (38) Thus, the only
burden of proof instruction given to the jury was beyond a reasonable doubt. Furthermore,
the trial court gave the jury a burden of proof instruction concerning extraneous offenses,
even though it was not required to do so. (39) "Appellant cannot complain about a gratuitous
instruction that served only to benefit him." (40) Points of error eleven and twelve are
overruled.

 In point of error thirteen, appellant alleges that the trial court erred in giving the jury
the following "anti-sympathy" instruction:

You are further instructed that you are not to be swayed by mere sentiment,
conjecture, sympathy, passion, prejudice, public opinion or public feeling in
considering all of the evidence before you and in answering Special Issue 
No. 1.


Appellant argues that the anti-sympathy instruction violates Article 36.14 and amounts to
a comment on the weight of the evidence in violation of Article 38.05. These claims are
without merit. We have held that "the irrelevance of 'mere sentiment, conjecture, sympathy,
passion, prejudice, public opinion or public feeling' to the jury's assessment of mitigating
evidence . . . is a component of 'the law applicable to the case' for purposes of instructing
the jury under Article 36.14." (41) We have also held that the anti-sympathy instruction is not
a comment on the weight of the evidence. (42) 

 Appellant also contends that the anti-sympathy instruction violated his rights to due
process and a fair trial under the Fifth, Eighth, and Fourteenth Amendments to the United
States Constitution, and his rights to due process and a fair trial under Article I, §§ 10, 13,
and 19 of the Texas Constitution. Appellant does not provide separate authority or
argument for these constitutional claims. (43) Further, we have held that the anti-sympathy
instruction does not violate the federal or state constitutions, (44) and appellant fails to
persuade us that our prior holding is incorrect. Point of error thirteen is overruled.

V.

Ineffective Assistance of Counsel Claim


 In point of error sixteen, appellant argues that counsel was ineffective because he
failed to object to the "clear evidence" instruction regarding extraneous offenses. (45) He
contends that counsel should have objected "because the trial court instructed the jury using
two mutually exclusive standards of proof, one of which lowered the standard of proof
based upon the State." He further asserts that counsel's ineffectiveness "denied [him] due
process and equal protection of the law as well as protection against cruel and unusual
punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution."

 To prevail on a claim of ineffective assistance of counsel, appellant must show (1)
deficient performance and (2) prejudice. (46) "Judicial scrutiny of counsel's performance must
be highly deferential." (47) To show deficient performance, the defendant must prove by a
preponderance of the evidence that his counsel's representation fell below the standard of
professional norms. (48) To demonstrate prejudice, the defendant must show a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would
have been different. (49)

 Appellant has failed to meet his burden to demonstrate deficient performance and
prejudice. As we stated in our resolution of points of error eleven and twelve, clear proof
means proof beyond a reasonable doubt. (50) Counsel was not ineffective for failing to object
to a gratuitous instruction that served only to benefit appellant. (51) Point of error sixteen is
overruled. 

 Finding that appellant's claims are without merit, we affirm the judgment and
sentence of the trial court.


Delivered: September 13, 2006


Do Not Publish 
1. Tex. Penal Code § 19.03(a).
2. Tex. Code Crim. Proc. art. 37.071, § 2(g). Unless otherwise indicated, all references
to Articles refer to the Texas Code of Criminal Procedure.
3. Art. 37.071, § 2(h). 
4. 536 U.S. 584 (2002).
5. 530 U.S. 466 (2000).
6. Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003), cert. denied, 541
U.S. 1032 (2004). 
7. 531 U.S. 98 (2000).
8. Crutsinger v. State, No. AP-74,769, 2006 Tex. Crim. App. LEXIS 924, at *15-16 (Tex.
Crim. App. May 10, 2006); Rayford v. State, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003), cert.
denied, 543 U.S. 823 (2004). 
9. McBride v. State, 862 S.W.2d 600, 611 (Tex. Crim. App. 1993); Joiner v. State, 825
S.W.2d 701, 709 (Tex. Crim. App. 1992). 
10. Appellant includes the same claims in this motion that he independently raises in points
of error one, three, and five.
11. 408 U.S. 238 (1972).
12. 510 U.S. 1141 (1994).
13. 486 U.S. 367 (1988).
14. 494 U.S. 433 (1990).
15. Blue v. State, 125 S.W.3d 491, 500-01 (Tex. Crim. App. 2003), cert. denied, 543 U.S.
853 (2004); Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999); Prystash v. State, 3
S.W.3d 522, 535-36 (Tex. Crim. App. 1999); Cantu v. State, 939 S.W.2d 627, 648-49 (Tex.
Crim. App. 1996); Escamilla v. State, 143 S.W.3d 814, 828 (Tex. Crim. App. 2004), cert.
denied, 544 U.S. 950 (2005); Russeau v. State, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005);
Shannon v. State, 942 S.W.2d 591, 600-01 (Tex. Crim. App. 1996). 
16. Busby v. State, 990 S.W.2d 263, 272 (Tex. Crim. App. 1999); Eldridge v. State, 940
S.W.2d 646, 654 (Tex. Crim. App. 1996); Green v. State, 912 S.W.2d 189, 195 (Tex. Crim. App.
1995).
17. Threadgill v. State, 146 S.W.3d 654, 672 (Tex. Crim. App. 2004); Matchett v. State,
941 S.W.2d 922, 933 (Tex. Crim. App. 1996). 
18. Ladd, 3 S.W.3d at 567.
19. Id.
20. Appellant was charged only with the deaths of Ashley and Brittany.
21. Defense counsel also objected that Ms. Frank's testimony was hearsay and referred to a
victim who was not named in the indictment. However, appellant only argues on appeal that Ms.
Frank's testimony was inadmissible because her opinion failed to meet the requirements of Tex.
R. Evid. 701. 
22. Osbourn v. State, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). 
23. Id.
24. Mosley v. State, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998). 
25. The State did, however, provide notice of its intent to introduce evidence that appellant
sexually assaulted LaKeyda on or about April 20, 2002. 
26. Appellant also generally alleges that the admission of Chevalier's testimony violated
his rights to "due process, assistance of counsel[,] and a fair trial" under the Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution, and his rights to "due course of law,
assistance of counsel[,] and a fair trial" under Article I, §§ 10 and 19 of the Texas Constitution. 
Appellant does not provide separate authority or argument for his constitutional claims; thus, we
decline to address them. TEX. R. APP. P. 38.1. 
27. Hughes v. State, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000) (citing Rojas v. State, 986
S.W.2d 241, 251 (Tex. Crim. App. 1998)
). 
28. Rojas, 986 S.W.2d at 251. 
29. Hughes, 24 S.W.3d at 842 (citations omitted).
30. It should also be noted that appellant could have asked for a continuance, if he was in
fact surprised by Chevalier's testimony. See Barnes v. State, 876 S.W.2d 316, 328 (Tex. Crim.
App. 1994) (holding if a witness's name is not furnished to a defendant before trial despite a
court order, any error in allowing that witness to testify over a claim of surprise is "made
harmless" by defendant's failure to object or move for a continuance). 
31. Tex. R. App. P. 44.2. 
32. 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.).
33. Id. at 130. 
34. Id. at 132.
35. The trial judge's "question" might well be viewed as a gentle way of saying, "Rephrase
your question, "counselor."
36. See Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). 
37. T
EX. R. APP. P. 33.1.
38. Harrell v. State, 884 S.W.2d 154, 158 (Tex. Crim. App. 1994). 
39. See Ladd, 3 S.W.3d at 574-575 (stating that, "as long as the punishment charge
properly requires the State to prove the special issues, other than the mitigation issue, beyond a
reasonable doubt, there is no unfairness in not having a burden of proof instruction concerning
extraneous offenses") (citations omitted). 
40. Kutzner v. State, 994 S.W.2d 180, 189 (Tex. Crim. App. 1999).
41. McFarland v. State, 928 S.W.2d 482, 523 (Tex. Crim. App. 1996).
42. Fuentes v. State, 991 S.W.2d 267, 277 (Tex. Crim. App. 1999).
43. See TEX. R. APP. P. 38.1(h).
44. Green v. State, 912 S.W.2d 189, 195 (Tex. Crim. App. 1995). 
45. See the discussion of points of error eleven and twelve, supra.
46. Strickland v. Washington, 466 U.S. 668, 687 (1984).
47. Id. at 689.
48. Id. at 688. 
49. Id. at 694. 
50. Harrell, 884 S.W.2d at 158.
51. Kutzner, 994 S.W.2d at 189.