**Motions for Rehearing and En Banc Reconsideration Denied as Moot; Affirmed and Substitute Memorandum Opinion filed February 14, 2023.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-19-00958-CR

---

### MICHAEL PATRICK ANDERSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1634095**

---

### SUBSTITUTE MEMORANDUM OPINION

We issued our original opinion in this case on January 19, 2023. Appellant filed a motion for rehearing and a motion for en banc reconsideration. We deny both motions as moot, withdraw our previous opinion, vacate our previous judgment, and issue this substitute opinion and judgment.

Appellant Michael Patrick Anderson appeals his conviction for continuous sexual assault of a child. *See* Tex. Penal Code Ann. § 21.02(b)(1). In seven issues,

appellant argues that the trial court erred by: (1) sustaining the State's objection to his inquiry into complainant's sexual history; (2) allowing the State to impeach him with his successfully completed deferred adjudication probation; (3) failing to answer the jury's note during jury deliberations; (4) denying his motion for new trial; (5) sustaining the State's objection to the testimony of appellant's trial attorney regarding jury misconduct; (6) quashing appellant's juror subpoenas; and (7) denying appellant the opportunity to make an offer of proof. We affirm.

## I.    BACKGROUND

Appellant met Suzette Snider Lee ("Lee") when she was eighteen years old, and he was twenty-one years old. In 2008, the two reconnected; at the time, appellant was going through a divorce and Lee's husband had recently "abandoned" her. Lee soon moved into appellant's apartment with her three children. Around 2011, Lee, her children, and appellant moved into Lee's sister's two-bedroom apartment in Katy, Harris County, Texas. At this time, Lee's children—C.S., H.W., and C.W.— were two, eight, and ten, respectively. The children stayed in one bedroom and Lee and the appellant in the other. Lee's usual work hours at David's Bridal during this time were from 10:00 AM to 6:00 PM. Appellant was usually out of the apartment for work from 5:30 AM to 7:00 PM. There were a few times when the appellant would return home from work before Lee did. The apartment lease had 4-6 months remaining when they moved in. When the lease expired, appellant, Lee, and her children moved into a mobile home owned by Lee's parents in Goodrich, Polk County, Texas. While living in Goodrich, the appellant and Lee got into a fight about Lee's alleged affair and appellant's alcohol consumption. During this fight, Lee asked appellant to move out, which he did, and the pair broke up.

About six years later, in 2017, Lee took her then thirteen-year-old daughter, H.W., to the doctor because she was experiencing abdominal pain and gynecological

issues. H.W. was also having trouble sleeping and was experiencing heavy menstrual cycles, passing heavy blood clots. While at the doctor's office, H.W. began crying and was very upset and told her mother that appellant had "touched her" "many times" while they lived in the mobile home in Goodrich. H.W. said she could not remember where everybody was during the occurrences but that it only started happening to her when they moved to Goodrich. H.W. told Lee that appellant removed her clothes and penetrated her with his penis.

When H.W. and Lee arrived home from the doctor's visit, Lee waited for C.W. to return home from school to ask her if C.W. had the same experiences. When C.W. arrived, she found H.W. crying with Lee. Lee told C.W. what happened to H.W., and Lee asked C.W. if anything had happened to her. C.W. replied that while they were living in the Katy apartment, appellant had gotten into her bed, laid behind her, spread open her legs, and put his hands in her vaginal area. C.W. also said that her clothes remained on, but that appellant moved her underwear to the side. C.W. stated that the incident had only happened once. Within days, Lee reported her daughters' claims to the police. At one point, Lee told the police that the molestation occurred "every night" when she went to work. Lee later explained that she knew that was not true but that is how she felt after hearing her daughters' recollection of the occurrences.

After Lee reported her daughters' claims to the police, Deputy Linder ("Linder"), a Harris County child abuse investigator, was referred the case from a patrol deputy. Linder investigated the case involving C.W. because it occurred in Harris County, which is within Linder's jurisdiction. Linder did not investigate H.W.'s case because it occurred in Polk County. After Linder's investigation, the Harris County District Attorney's office accepted one charge of indecency with a child against appellant.

3

Appellant was charged by indictment with continuous sexual assault of a child. The indictment alleged that during a period of time of thirty days or more, appellant committed two acts of sexual abuse against a child younger than fourteen years of age: an act constituting indecency with a child by contact against C.W. in April 2011 and an act constituting aggravated sexual assault of a child against H.W. in January 2012. Appellant pleaded not guilty and exercised his right to a jury trial.

## A.    State's Witnesses

### 1.    C.W.

At trial, C.W. testified that while living in the apartment in Katy there was a single occasion when she was lying on the bed in the main bedroom watching television and appellant began "spooning" her and rubbing her vagina with his hand. When this happened, C.W. did not like it, so she got up and left the room. C.W. stated that she did not like appellant because he was mean and used to hit her little brother on his head with his ring. She recalled one incident when the appellant hit her brother with a pot and threw a beer at her mother. When appellant's counsel asked C.W. if Lee "wanted [appellant] put in jail," C.W. responded "Yes."

### 2.    H.W.

H.W. testified at trial that while living in Goodrich, appellant came into the room she was coloring in, removed her pants, got behind her and rubbed his penis on her for "a little bit," then left. He did this several times on different occasions. Another time, while Lee was at work, H.W. was watching TV in her mom's bedroom when appellant came in, closed the door, and "put something underneath" the door. Appellant retrieved a clear liquid out of the dresser and put it on his penis, took off H.W.'s pants, and put his penis inside of her vagina. When it started hurting, H.W. got up and left the room. Appellant told her he was sorry and begged her to come back. H.W. stated she did not tell anyone because she was scared; H.W. was afraid

4

that appellant would hurt her and/or "abuse [her] little brother." H.W. testified that appellant molested her in this way more than five times while living in Goodrich. She claimed to have never seen his penis during any of these occurrences. H.W. also did not like appellant because he hurt her little brother often. H.W. explained that she revealed the abuse to her mother at the doctor's office because she thought it might be related to her heavy periods. H.W. stated that she was afraid of appellant because of the way he disciplined her brother.

### 3. Suzette Lee

Lee testified that while living with appellant, he had exhibited violence towards herself and her son, C.S. Appellant wore a metal ring made from a motor piston and would hit C.S. on the head with his hand. C.W. and H.W. both witnessed this. Appellant also punched through the sheetrock in the laundry room on one occasion. There was another occasion when appellant threw a full beer can at Lee. Appellant attempted to ask Lee if she knew of or had been informed by H.W.'s doctor that H.W. was sexually active. The State objected to this question, arguing that the question was within the realm of Rule 412 of the Texas Rules of Evidence. The trial court sustained the objection. *See* Tex. R. Evid. 412(a) (providing that reputation or opinion evidence of a victim's past sexual behavior or specific instances of a victim's past sexual behavior are not admissible in a prosecution for sexual assault, aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault).

### 4. Patti Schofield, SANE Nurse

Patti Schofield, a certified Sexual Assault Nurse Examiner ("SANE"), testified that on the physical examination, H.W. had a hymenal transection greater than 50 percent, which is highly suspicious and consistent with sexual abuse based upon her own experience as well as the work of two top forensic pediatricians in the State of Texas and the country, Joyce Adams and Nancy Kellogg. Schofield further

testified that the outcry of sexual abuse, together with the findings of a transection greater than 50 percent, enabled her to state there is a correlation with sexual abuse. She admitted that the hymenal injury could have occurred within a year or even within six months of the examination done six years after the alleged abuse. When asked if her findings alone could be consistent with H.W. "not having sexual abuse," Schofield answered in the negative. Appellant asked Schofield whether she asked C.W. and H.W. about their sexual activity. The State objected to this question under Rule 412 of the Texas Rules of Evidence, and the trial court sustained the objection. *See id.*

### 5. Jamie Haynes, Forensic Interviewer

Jamie Haynes, a forensic interviewer, testified that he interviewed C.W. and H.W. on the same day. According to Haynes, they both cried during the interviews and they both described instances of sexual abuse. On cross-examination, Haynes testified about the reason C.W. was crying during her interview:

| [Appellant's counsel]: | But isn't it true that [C.W.] was crying about her brother, not the [sexual] abuse? |
| --- | --- |
| [Haynes]: | Yes. |
| [Appellant's counsel]: | So, she was not crying about the abuse when she was talking to you and explaining what happened? |
| [Haynes]: | That's correct. |
| [Appellant's counsel]: | Is that correct? |
| [Haynes]: | Yes. |
| [Appellant's counsel]: | Okay. She only started crying when she started talking about her brother? |
| [Haynes]: | Yes. |

. . .

| [Appellant's counsel]: | So, when [C.W.] was talking about the abuse . . . she was not emotional when she was telling—explaining to you what happened, right? |
|---|---|
| [Hayes]: | She began crying when she was talking about her concerns of what happened to her brother. |

After appellant's counsel further questioned Haynes about the interviews Haynes conducted with C.W. and H.W., the State approached the bench and argued that appellant "opened the door for one of the motions in limine talking about previous incidents of abuse against the brother." According to the State, appellant misled the jury, causing the jurors to believe C.W. was just crying about her brother, while she was actually crying about her brother because she feared appellant, and was scared to make any outcry statements against appellant. The trial court agreed with the State that appellant had opened the door to evidence of appellant's treatment of the children and why the children feared appellant.

## B.    Appellant's Witnesses

### 1.    Michael Patrick Anderson

Appellant testified in his own defense. According to his testimony, he spent his teen years into adulthood in Houston and was forced to drop out of high school to support his family. Appellant denied ever touching either of the girls inappropriately. He admitted to disciplining C.S. but claimed it was not to the extent alleged by Lee, C.W., and H.W. While living in Katy, appellant fixed up Lee's grandparents' trailer for two months before moving to Goodrich. Appellant claimed that none of the children's biological fathers came to visit them. He further testified

that he felt betrayed by the girls' allegations and that he tried to be good to Lee and the children. Appellant claimed that he found out Lee was cheating on him, and the couple broke up because of her cheating and appellant's alcohol abuse.

His attorney asked him if he had "been doing a pattern of domestic violence" and appellant responded "No." On cross-examination, after the trial court stated that appellant had opened the door on the issue of domestic violence, the State questioned appellant concerning his arrest for assault of a family member in 2002, for which he was placed on deferred adjudication. Without objection, appellant admitted that he pleaded guilty to that charge. The trial court then granted appellant's running objection to questions concerning the 2002 arrest.

Appellant claimed to never have put a hand on Lee. He said that after the breakup, he would see Lee and the children at family functions and C.W. and H.W. were seen at a pool party interacting with appellant. Appellant claimed the girls were not fearful of him.

## 2.    Lourdes Bosquez, M.D.

Appellant called Lourdes Bosquez, M.D., to testify. Bosquez is a medical doctor, psychiatrist, and forensic examiner with experience in child abuse cases. Bosquez testified that there was no evidence of grooming in this case and that the partially ruptured hymen of H.W. is inconsistent/non-conclusive regarding sexual abuse. Bosquez claimed that the damaged hymen could have happened through consensual sexual activity and that delayed sexual abuse outcries are rare. Bosquez implied that there would be no reason for complainants' delayed outcries because the girls denied that appellant used any threats, intimidation, or force against them. When C.W. and H.W. were asked "what were you told you were coming in here [sic]?", Bosquez noted that both girls said something along the lines of "to say as

much as we could to put [appellant] in jail." To Bosquez, this may have been a sign of suggestibility, which she defined as "when someone asks you something and repeats the question until you get to get an answer."

### 3.     Character Witnesses

The appellant then called several character witnesses to testify to appellant's reputation of honesty, good moral character, and safe conduct around children

John Zak, a co-worker and friend of appellant, testified that appellant is "very respectful and courteous to people . . . [and] hard working . . . [and] truthful." He also asserted, "he's very safe and I trust him with my children."

Michael Leslie Fulgham, appellant's son, affirmed his belief that appellant is truthful in addition to having "good moral character and safe conduct around children."

Marianne Arceneaux, appellant's fiancé, testified that appellant exhibits "safe conduct with children."

Appellant also called his ex-wife, Lavada Fulgham, to testify. Lavada stated she had known appellant for about twenty-five years, that they were married in 2005, and have a son. Lavada testified that the 2002 assault occurred prior to their marriage, and that the situation improved when appellant followed the recovery program. She testified regarding appellant's reputation, stated appellant is truthful, and "is a good-hearted man who will bend over backward to help anyone in need, especially the elderly or young." Lavada said she had seen appellant around children on many occasions, and has good moral character and safe conduct around young children, and despite the charge against appellant, maintains her opinion as to his reputation. On cross-examination, Fulgham testified, without objection, that the

2002 assault involved appellant tackling her to the ground causing pain in her shoulder and leaving a mark on her left forearm.

Leslie Fulgham, one of appellant's in-laws, testified that she has known appellant for twenty-two years. She claimed that appellant is "extremely dependable, honest, hard-working and you can count on him when you need somebody." She also asserted that he has "a good character for moral and safe conduct around young children."

Lavada Fulgham's sister-in-law, Deborah Kay Fulgham, also testified regarding appellant's reputation for truthfulness, which she stated was "reliable in that area," and when asked on direct examination about appellant's good character for moral and safe conduct around young children, stated appellant was always positive and engaging with children and looked out for the children. Deborah further testified that she was aware of the 2002 assault charge, and that the counseling appellant received afterward had "absolutely" helped him.

## C.    Jury Note

During deliberations the jury sent a note to the trial court, which read: "Point of clarity – Do we need to find action against both of the girls or simply just one to find guilt in continuous charge?" When the trial court received this note, it answered, "Please refer to the court's charge and continue to deliberate." The jury found appellant guilty as charged, and the court sentenced him to sixty years' confinement in the Texas Department of Criminal Justice.

## D.    Motion for New Trial

Following the verdict, William Perkins ("Perkins"), appellant's co-counsel, spoke to three jurors. According to Perkins, the jurors allegedly did not deliberate on the charge involving C.W. and rendered a verdict only with regard to H.W. He

further claimed that the jury refused to deliberate on the allegation involving C.W. because they did not feel it necessary, and that the jury rejected the State's theory of multiple victims and sua sponte rendered a verdict based on a single victim theory that occurred in Polk County.

Appellant timely appealed his conviction, and filed a motion for new trial, advancing the following bases: insufficient evidence to sustain a verdict, improper venue, court error in failing to answer the jury note, jury misconduct, and ineffective counsel. Attached to the motion for new trial were affidavits from Perkins and three of the jurors. At the hearing on the motion, the court quashed the subpoenas for the jurors and refused to allow their testimony, and refused to allow Perkins to testify regarding his conversations with the jurors. The trial court also denied appellant's motion for new trial.

Appellant asserts on appeal that the trial court abused its discretion (1) when it sustained the State's objection to appellant's question regarding H.W.'s prior consensual sexual activity pursuant to Texas Rule of Evidence 412, (2) when it allowed the State to impeach appellant with evidence of appellant's successfully completed deferred adjudication probation, (3) when it overruled appellant's motion for a new trial, and (4) when it granted the State's objection to the testimony of appellant's trial lawyer. Additionally, appellant claims he suffered egregious harm when the trial court "failed to answer the jury's note regarding the law of continuous sexual assault," and that the court violated his due process rights and Texas Rules of Evidence 606(b) when it granted the state's motion to quash appellant's juror subpoenas. Finally, appellant argues the trial court violated Texas Rules of Evidence 103(a)(2) when it denied appellant the "ability to make offers of proof."

## II.  INQUIRY INTO COMPLAINANT'S SEXUAL HISTORY

In his first issue, appellant argues that the trial abused its discretion when it sustained the State's objection to appellant's questions regarding H.W.'s prior consensual sexual activity pursuant to Texas Rule of Evidence 412.

### A.  Standard of Review & Applicable Law

We afford trial judges wide discretion in limiting the extent and scope of cross-examination. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). We will not disturb the trial court's evidentiary ruling if it is correct under any applicable theory of law, even if the court gave a wrong or insufficient reason for the ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Evidence of the reputation or opinion evidence of a victim's past sexual behavior or specific instances of a victim's past sexual behavior is inadmissible in a trial for sexual assault. *See* Tex. R. Evid. 412(a); *Alford v. State*, 495 S.W.3d 63, 66-67 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). However, this evidence is admissible if it is necessary to rebut or explain scientific/medical evidence offered by the prosecutor and the probative value of the evidence outweighs the danger of unfair prejudice. Tex. R. Evid. 412(b). There is a specific procedure within this admissibility exception for offering evidence of the victim's past sexual behavior:

> before offering any evidence of the victim's past sexual behavior*, the defendant must inform the court outside the jury's presence.* The court must then conduct an in-camera hearing, recorded by a court reporter, and determine whether the proposed evidence is admissible. The defendant may not refer to any evidence ruled inadmissible without first requesting and gaining the court's approval outside the jury's presence.

Tex. R. Evid. 412(c) (emphasis added). A defendant fails to meet the procedural requirement for admissibility when he does not inform the court beforehand of his intention to introduce evidence of past sexual behavior of the victim and attempts to

elicit such testimony on cross-examination in front of the jury. When the defendant fails to meet the procedural requirements of Rule 412(b), he cannot later complain on appeal of the exclusion of the evidence. *See Marx v. State*, 953 S.W.2d 321, 337 (Tex. App.—Austin 1997), *aff'd*, 987 S.W.2d 577 (Tex. Crim. App. 1999) ("[A]ppellant did not inform the court of his intention to inquire into the incident concerning the uncle prior to asking the witness about it. Instead, appellant attempted to ask about the incident on cross-examination in front of the jury, whereupon the State objected. Because [appellant] did not meet Rule 412's procedural requirement for introducing this evidence, he cannot now complain of its exclusion."); *Golden v. State*, 762 S.W.2d 630, 632 (Tex. App.—Texarkana 1988, pet. ref'd) (same).

## B.   Application

During both the cross-examination of the SANE nurse and Lee, appellant attempted to bring forth evidence regarding H.W.'s and C.W's sexual history. However, appellant did not inform the trial court outside of the jury's presence of his intention to ask these questions before attempting to ask them. Because appellant did not satisfy Rule 412's requirement for the introduction of evidence of the complainants' sexual history, he cannot now complain of its exclusion. *See* Tex. R. Evid. 412(c); *Johnson*, 490 S.W.3d at 908; *Marx*, 953 S.W.2d at 337.

We overrule appellant's first issue.

### III.   EVIDENCE OF DEFERRED ADJUDICATION PROBATION

In his second issue, appellant argues that the trial court erred when it allowed the State to impeach him with evidence of his successfully completed deferred adjudication probation.

## A.     Standard of Review & Applicable Law

We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard. *Johnson*, 490 S.W.3d at 908; *Walker v. State*, 2 S.W.3d 655 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). A trial court abuses its discretion if it acts without reference to guiding rules and principles or acts arbitrarily and unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). We will only reverse the judgment if the trial court's ruling was outside the "zone of reasonable disagreement." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 609 governs the admissibility of prior convictions used to impeach a witness. *See* Tex. R. Evid. 609. Rule 609 requires that evidence of criminal convictions offered to attack a witness' character for truthfulness must be admitted if (1) the crime was a felony or involved moral turpitude, regardless of punishment; (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) it is elicited from the witness or established by public record. *See* Tex. R. Evid. 609(a).

Evidence that is otherwise inadmissible may be admissible if the party against whom such evidence is offered "opens the door" for its admission. *See Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997); *see also Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (rebutting a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)"). A party opens the door by "leaving a false impression with the jury that invites the other side to respond," but regardless, the trial judge maintains discretion to exclude the evidence. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). Evidence of deferred adjudication or a defendant being on parole can be admissible under Rule 404(b). *See Powell v. State*, 189 S.W.3d 285, 286 (Tex. Crim.

App. 2006); *Moreno v. State*, 944 S.W.2d 685, 692 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 22 S.W.3d 482 (Tex. Crim. App. 1999); *see also Britt v. State*, No. 14-06-00131-CR, 2007 WL 1215490, at *5 (Tex. App.—Houston [14th Dist.] Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication); *Owen v. State*, No. 2-03-164-CR, 2004 WL 966323, at *5 (Tex. App.—Fort Worth May 6, 2004, no pet.) (mem. op., not designated for publication).

Stated differently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense, but extraneous offense evidence that tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith. *See* Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 386–87 (Tex. Crim. App. 1991) (op. on reh'g); *Owen*, 2004 WL 966323, at *5 (concluding that the trial court did not err in admitting evidence of defendant's deferred adjudication probation to rebut defendant's defensive theory that she was not aware the FedEx package contained drugs); *cf. Moreno*, 944 S.W.2d at 692 (concluding that the trial court erred in admitting evidence of defendant's deferred adjudication because "the evidence of appellant's deferred adjudication status had no tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence") (internal quotations omitted).

## B.  Application

Appellant argues that because he successfully completed his misdemeanor deferred adjudication for assault of a family member, evidence of that offense was not admissible under Rule 609. However, below and on appeal, the State argues that

evidence of the offense was admissible under Rule 404(b) to rebut appellants' defensive theories.

During trial, appellant gave the impression that he was not violent with the children by testifying that he was never physically violent with Lee or the children and by eliciting testimony from Lee multiple times as to whether C.W. and H.W. were afraid of appellant. Appellant also called seven witnesses, all of whom testified concerning his trustworthiness and "safe conduct around young children." Appellant was asked "had you been doing a pattern of domestic violence during any of this time that you would—that you thought of?"; appellant answered "No. No." Appellant also testified he was shocked to learn that C.W. and H.W were scared of him because he "never" did anything that would make them fearful of him being abusive.

Appellant's overall defensive theory was that he was trustworthy, safe around children, and that C.W. and H.W. had absolutely no reason to fear him because he was never abusive. Additionally, a component of his defensive theory was that the complainants simply lied about the allegations because Lee hated him and wanted to put him in jail. Because appellant created an impression that the children had no reason to fear him, the State was entitled to present evidence to rebut this defensive theory. *See* Tex. R. Evid. 404(b); *Schutz*, 957 S.W.2d at 71. Evidence of appellant's past assault of a family member helps rebut appellant's theory that the complainants had no reason to fear him. *See Montgomery*, 810 S.W.2d at 386–87; *Moreno*, 944 S.W.2d at 692. Accordingly, we cannot conclude that the trial court abused its discretion in finding that appellant had opened the door to evidence of his prior assault on a family deferred adjudication. *See Johnson*, 490 S.W.3d at 908.

We overrule appellant's second issue.

## IV. THE TRIAL COURT'S RESPONSE TO THE JURY'S NOTE

In his third issue, appellant argues that the trial court erred by failing to provide further instruction in response to the jury's note sent to the trial court during jury deliberations. Appellant did not object to the trial court's response to the jury note at trial. Nevertheless, appellant argues that he is entitled to a "some harm" analysis because the record does not reflect that he was aware of the jury note and did not have an opportunity to respond or object to the court's response to the note. The facts here are identical to the facts in *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995). In *Green*, the defendant argued that based on the record, it was not clear that he was aware of the jury note, and thus he did not have an opportunity to object to the trial court's response to the jury note. *See id.* In rejecting this argument, the Court of Criminal Appeals noted:

> This Court does not decide cases based on speculation about matters not shown in the record. In the absence of a showing to the contrary in the record, we presume the trial court's response was in open court and in appellant's presence. Therefore, we also presume appellant had an opportunity to object.

*Id.* The high court in *Green* concluded that the defendant waived any error. *See id.* at 193.

In the present case, we presume that the trial court's response was made in open court and in the presence of appellant. *See id.* Therefore, we conclude that appellant has waived any error based on the trial court's response to the jury note. *See id.*; *see also Hisey v. State*, No. 01-19-00929-CR, 2021 WL 627040, at *4 (Tex. App.—Houston [1st Dist.] Feb. 18, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant waived error concerning the trial court's response to a jury note because he did not object and it is presumed the trial court responded in open court and in the defendant's presence).

We overrule appellant's third issue.

## V.    MOTION FOR NEW TRIAL

In his last four issues, appellant argues that the trial court erred by: quashing appellant's juror subpoenas (sixth issue); granting the State's objection to the testimony of appellant's trial attorney regarding jury misconduct (fifth issue); denying appellant the opportunity to make an offer of proof (seventh issue); and denying his motion for new trial (fourth issue).

## A.    Standard of Review & Applicable Law

We review the trial court's denial of a motion for new trial under an abuse of discretion standard. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). When jury misconduct is the basis for the motion for new trial, whether misconduct occurred is a determination made by the trial court, which will not be disturbed on appeal absent an abuse of discretion. *See Short v. State*, 995 S.W.2d 948, 954 (Tex. App.—Fort Worth 1999, pet. ref'd); *Dixon v. State*, No. 14-00-00028-CR, 2001 WL 815061, at *4 (Tex. App.—Houston [14th Dist.] July 19, 2001, pet. ref'd) (not designated for publication). Further, the movant must show that the jury misconduct occurred and that the misconduct was detrimental to the movant. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981).

The privacy of jury deliberations is strictly enforced by Texas' Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 36.22. The Texas Court of Criminal Appeals has emphasized that jury deliberations are to be conducted in a "veil of confidentiality." *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 200 (Tex. Crim. App. 2003).

This policy extends to post-verdict juror testimony. *See White v. State*, 225 S.W.3d 571, 575 (Tex. Crim. App. 2007) (Price, J., concurring). The court may not

receive a juror's affidavit or evidence of a juror's statement that concerns any incident that occurred during the jury's deliberations, or the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment. Tex. R. Evid. 606(b)(1). However, a juror may testify about whether an outside influence was improperly brought to bear on any juror, or to rebut a claim that the juror was not qualified to serve. Tex. R. Evid. 606(b)(2)(A-B). The purpose of these exceptions is to allow proof of external pressures that are likely to affect the verdict. *Colyer v. State*, 428 S.W.3d 117, 118 (Tex. Crim. App. 2014). An "outside influence" is something originating from a source outside of the jury room and other than from the jurors themselves. *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012). To allow jurors to feel free to raise and discuss differing viewpoints without the fear of public opinion or scrutiny, the trial court may not inquire into the subjective thought processes of the jury during deliberations. *Id*. at 153.

## B.    Application

In support of his motion for new trial, appellant attached three jurors' affidavits averring, in similarly-worded language, that they did not believe C.W.'s testimony, that they were unsure if they "had to find if [appellant] committed two instances of indecency or sexual assault against each complaining witness," the judge did not answer "this very same question," and they stopped deliberating after a "finding of two acts of sexual assault against either of the two complainants."

During the hearing on appellant's motion, when appellant's counsel attempted to testify as to what jurors told him had occurred during jury deliberations, the trial court sustained the State's objections and refused to allow appellant's counsel to testify concerning his conversations with the jurors. Shortly after, the trial court allowed appellant to make an offer of proof. Appellant's counsel proceeded to testify

that he spoke with eight of the jurors and that he learned of "jury misconduct," namely that the "conviction was based on two or more incidents involving [H.W.] alone." The trial court then asked appellant's counsel several follow-up questions:

| | |
|---|---|
| [Trial court]: | Were you ever concerned that the jurors were subject to outside influence during their deliberations? |
| [Appellant's counsel]: | Not that I'm aware of. |
| [Trial court]: | Did you have any questions as to the qualifications of any of the jurors that you spoke with? |
| [Appellant's counsel]: | No. They understood and were able—to the best of my knowledge, they were qualified. |

### 1.    Quashing the Juror Subpoenas

Rule 606(b) does not allow evidence to be admitted pertaining to what occurred during jury deliberations, unless such evidence would show that an outside influence was improperly brought to bear upon a juror or to rebut a claim that a juror is not qualified to serve. Tex. R. Evid. 606(b). Appellant's counsel admitted that there was no concern that jurors were improperly subject to an outside influence; nor was there a concern that the jurors were not qualified. Therefore, we conclude that the trial court did not err by quashing the juror subpoenas. *See id.*; *McQuarrie*, 380 S.W.3d at 154; *see also Tinker v. State*, 148 S.W.3d 666, 673 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("The trial court quashed the affidavit and, because it was the only support for appellant's motion, the court denied the motion for new trial without a hearing. After reviewing the juror's affidavit in this case, we find that it addressed only matters which the juror learned during jury deliberations. These matters clearly came from the other jurors and, as such, do not constitute outside

influences. Accordingly, the trial court properly quashed the juror affidavit and denied appellant's motion for new trial.").

Appellant further suggests that rules such as Rule 606(b) must "give way to due process." Thus, according to appellant, despite Rule 606, he should have been allowed to subpoena the jurors to prevent the denial of due process and a fair trial. However, we have previously observed that Rule 606 is constitutional under both the state and federal constitutions guaranteeing a fair and impartial jury. *See Hicks v. State*, 15 S.W.3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Hines v. State,* 3 S.W.3d 618, 622–623 (Tex. App.—Texarkana 1999, pet. ref'd); *Sanders v. State,* 1 S.W.3d 885, 888 (Tex. App.—Austin 1999, no pet.)).

We overrule appellant's sixth issue.

### 2. Disallowing Appellant's Counsel Testimony Regarding Jurors

Appellant also complains that the trial court erred by disallowing appellant's counsel to testify concerning his conversations with the jurors. This court has concluded that Rule 606 does not conflict with Texas Rule of Appellate Procedure 21.3 because Rule 606 does not "preclude proof of jury misconduct by other means, such as through the testimony of a nonjuror with personal knowledge of the misconduct." *Hicks*, 15 S.W.3d at 630; *see* Tex. R. App. P. 21.3. We find *Mayo v. State*, 708 S.W.2d 854 (Tex. Crim. App. 1986) to be instructive. In *Mayo*, a witness was permitted to testify concerning a telephone conversation he had with the foreman of the jury, which occurred before final arguments and jury deliberations had begun. *Id.* at 856. However, unlike the witness in *Mayo*, appellant's counsel sought to testify concerning his conversations with the jurors to describe what occurred during jury deliberations after the jury rendered a verdict. Accordingly, we conclude that the trial court did not err in refusing to allow appellant's counsel to

testify concerning his conversations with the jurors. *See* Tex. R. Evid. 602(b); *Mayo*, 708 S.W.2d at 856.

We overrule appellant's fifth issue.

### 3. Offers of Proof

Appellant next asserts that he was improperly denied the ability to make offers of proof concerning the jurors' conversations. *See* Tex. R. Evid. 103(a)(2), (c) (requiring the trial court to allow parties to make an offer of proof).

The right to make an offer of proof is absolute. *See Kipp v. State*, 876 S.W.2d 330, 333 (Tex. Crim. App. 1994). A trial court does not have the option to deny such a request, although such denial is subject to a non-constitutional harm analysis. *See Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); *Kipp*, 876 S.W.2d at 333. To preserve error for appeal, an offer of proof must set forth the substance of the proffered evidence. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Here, contrary to appellant's argument, appellant was allowed to make adequate offers of proof.

As we noted above, while the trial court did not allow the jurors to be subpoenaed or allow appellant's counsel to testify during the hearing regarding his conversation with the jurors, the trial court allowed appellant to make offers of proof regarding the jury discussions. Appellant's counsel testified concerning his conversations with the jurors and how he learned that the jury allegedly disbelieved C.W., and that the foreperson may have instructed the other jurors how to interpret the application paragraph of the jury charge. The trial court verified with appellant's counsel that there was no concern of an outside influence on the jurors or any concern regarding the jurors' qualifications to serve. Additionally, we note that although the trial court seemingly agreed with the State's request to strike the three

juror affidavits attached to the motion for new trial, the affidavits are part of the appellate record. Accordingly, based on our review of the transcript and the record, we conclude that the trial court allowed appellant to make adequate offers of proof setting forth the substance of the proffered evidence. *See* Tex. R. Evid. 103(2); *Kipp*, 876 S.W.2d at 333.

We also note that appellant provides no authority for his argument that he was entitled to make offers of proof by calling the jurors themselves to testify. Contrary to appellant's argument, unless a juror is testifying regarding improper outside influences or in rebuttal of a claim that a juror was not qualified to serve, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Tex. R. Evid. 606(b). Thus, we reject appellant's argument because Rule 606 prevented the trial court from receiving the testimony appellant sought to present. *See id.* Finally, assuming *arguendo* the trial court erred, the testimony regarding the jury's deliberations and processes concerning the verdict is barred by Rule 606, and thus, appellant has failed to establish harm. *See* Tex. R. App. P. 44.2(a); Tex. R. Evid. 606(b); *Potier*, 68 S.W.3d at 659.

We overrule appellant's seventh issue.

### 4.      Motion for New Trial

In his fourth issue, appellant asserts that the trial court should have granted his motion for new trial because: (1) the trial court misdirected the jury regarding the law by not giving a more detailed response to the jury note; (2) the verdict was decided in a manner that was not a fair expression of the jurors' opinion; (3) the jury

engaged in misconduct that deprive appellant of a fair trial; and (4) the verdict was contrary to the law and evidence. *See* Tex. R. App. P. 21.3.

Concerning the first ground, we previously concluded that appellant waived any error relating to the trial court's response to the jury note. Appellant did not object to the language of the jury charge below, and he makes no complaint about the language of the jury charge itself on appeal.

Regarding the second ground for new trial, appellant has not shown that the verdict was "decided by lots or in any manner other than a fair expression of the jurors' opinion." *See* Tex. R. App. P. 21.3(c). Here, the jury returned a verdict, stating, "We, the jury, find [appellant], guilty of continuous sexual abuse of a child as charged in the indictment." The jury was then polled by the trial court; every juror was individually asked, "is this your verdict?", and every juror responded, "yes." Because the record contains sufficient evidence to support the conclusion that the verdict is a fair expression of the jurors' opinion, we hold that the trial court did not abuse its discretion in denying appellant's motion for new trial on this ground. *See McQuarrie*, 380 S.W.3d at 150; *Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984) ("[W]here there is conflicting evidence[,] there is no abuse of discretion where the motion for new trial is overruled."); *see also Colyer*, 428 S.W.3d at 126 ("The policy of upholding the finality of verdicts was served in this case by polling the jury. . . . After the jurors were excused, the time for post-verdict doubts had passed. . . . A juror's vote, when polled in open court, is a 'final sale' item; it cannot be exchanged because that juror later has buyer's remorse.").

Regarding the third ground for new trial, we previously concluded that the trial court properly refused to allow appellant's counsel to testify concerning his conversations with the jurors and that the trial court did not err by quashing the juror

24

subpoenas. Thus, there was no evidence in the record of any jury misconduct to support a new trial. *See Id.* R. 21.3(g); *see also* Tex. Evid. R. 606(b)(2).

Appellant's fourth ground for new trial can be summarized in two arguments. Appellant argues that the verdict was contrary to the law and evidence because: (1) venue in Harris County was proven to be improper; and (2) there was a variance between the indictment and the proof at trial—stated differently, the jury rendered a verdict on a theory not alleged in the charging instrument. We first address his argument that venue was improper.

### a. Venue was Proper in Harris County

In his motion for new trial, appellant asserted that the jury was required "to find both the Harris County and Polk County allegations true before rendering a verdict of guilty." According to appellant, the jury's failure to believe any assault occurred against C.W. in Harris County divested the trial court of venue. But to convict a defendant for the crime of continuous sexual abuse of a child, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." Tex. Penal Code Ann. § 21.02(d). The location of the sexual acts is not an element of the offense. Thus, the jury did not need to find that appellant had committed sexual assault in both Polk County and Harris County before rendering a verdict. *See id.*; *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

Additionally, under Article 13.075 of the Code of Criminal Procedure, an offense involving a victim younger than eighteen years of age that results in bodily injury to that victim, may be prosecuted in the county:

(1)     in which an element of the offense was committed;

(2)     in which the defendant is apprehended;

(3)     in which the victim resides; or

(4)     in which the defendant resides.

Tex. Code Crim. Proc. Ann. art. 13.075. Accordingly, because it is undisputed that appellant resides in Harris County, we conclude that venue was proper in Harris County. *Id.* art. 13.075(4).

### b.     There Was No Fatal Variance

We next address appellant's claim that there was a variance between the indictment and the proof at trial.

### i.     Standard of Review & Applicable Law

"A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). But not all variances require reversal:

> The Court of Criminal Appeals has decreed that a materiality inquiry must be made in all cases involving a sufficiency of the evidence claim based on a variance between the indictment and the evidence. Such a variance will be considered "fatal," and thus render the evidence insufficient, only when it is "material." A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the risk of being prosecuted twice for the same offense.

*Rogers v. State*, 200 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (internal citations omitted).

The Court of Criminal Appeals has recognized three different categories of variance:

> 1. a statutory allegation that defines the offense; not subject to materiality analysis, or, if it is, is *always material*; the hypothetically correct jury charge will always include the statutory allegations in the indictment;
>
> 2. a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; *sometimes material*; the hypothetically correct jury charge will sometimes include the non-statutory allegations in the indictment and sometimes not;
>
> 3. a non-statutory allegation that has nothing to do with the allowable unit of prosecution; *never material*; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018); *see Root v. State*, 615 S.W.3d 920, 928 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). "The bottom line is that . . . we tolerate variances as long as they are not so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Ramjattansingh*, 548 S.W.3d at 547; *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012) ("For example, in a murder prosecution, the victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial."); *cf. Beasley v. State*, 426 S.W.3d 140, 148 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that defendant's due process rights were violated when he was charged with burglary of a habitation with intent to commit sexual assault but he was found guilty of sexual assault).

"The burden of demonstrating materiality in the variance context rests with the [a]ppellant." *Coleman v. State*, 631 S.W.3d 744, 755 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd).

### ii.    Analysis

Appellant argues that there was a variance between the indictment and the proof at trial because he was charged with committing continuous sexual assault of a child by sexually abusing H.W. and C.W., but the jurors ultimately found him guilty of continuous sexual assault by committing two instances of sexual abuse against H.W. Stated differently, appellant alleges that his due process rights were violated because "[i]t is manifestly unfair to charge a citizen with a specific crime and a specific manner and means of committing said crime, and then to allow conviction under a different theory altogether." However, the proof at trial included evidence that appellant committed continuous sexual assault of a child by sexually abusing both H.W. and C.W.; thus, there is no variance between the indictment and the proof at trial. Additionally, as noted above, the jury was polled and every member testified that it was their verdict that appellant was guilty of continuous sexual abuse of a child as alleged in the indictment.

However, assuming for the sake of argument that there was a variance, appellant has still failed in his burden to demonstrate that the alleged variance was material. *See Coleman*, 631 S.W.3d at 755. Appellant does not argue that the allegations in the indictment would subject him to the risk of being prosecuted twice for the same offense; instead, he asserts that he could not prepare an adequate defense because he had no notice that the State intended to prove a multiple occurrence case against a single victim.

Appellant cites to cases such as *Beasley* for the proposition that a defendant can only be convicted for the offense as charged in the indictment. *See Beasley*, 426 S.W.3d at 149 ("Allowing a jury to find the defendant guilty of an unindicted offense that was not a lesser-included offense of the charged offense runs afoul of due process requirements."). However, cases like *Beasley* are distinguishable because the defendant in *Beasley* was charged with one offense—burglary of a habitation with intent to commit sexual assault—but convicted on a completely independent offense—sexual assault. *See id.* Here, appellant was convicted of the same offense with which he was charged—continuous sexual assault of a child.

The indictment properly gave appellant notice that the State would produce evidence from both H.W. and C.W. concerning alleged instances of sexual abuse. But even if the indictment was not sufficient, standing alone, to provide notice to appellant that the State alleged multiple occurrences against a single victim, "when analyzing whether a defendant received notice of the offense adequate to satisfy due process concerns, we are not required to look solely to the language of the charging instrument." *Buxton v. State*, 526 S.W.3d 666, 682 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). In September 2018, the State filed a "Notice of Intention to Use Child Abuse Victim's Hearsay Statement." This notice clearly indicated that while C.W. only alleged a single incident of sexual abuse, H.W. alleged that appellant sexually abused her "several times" and on "several occasions." In June 2019, the State filed its "State's Notice of Intention to Use Extraneous Offenses and Prior Convictions." In this notice, the State detailed its intent to introduce evidence that appellant sexually abused C.W. on "multiple occasions" between April 2011 and October 2011, and that he abused H.W. on "multiple occasions" between October 2011 and January 2012. When considering together the indictment and the pretrial

filings by the State, the record demonstrates appellant received notice of the State's theory of criminal liability such that he could adequately prepare a defense. *Id.*

Because the indictment did not deprive appellant of sufficient notice of the charges against him or subject him to the risk of being prosecuted twice for the same offense, we conclude that any alleged variance was not material. *See Rogers*, 200 S.W.3d at 236. In summary, we conclude that there was no variance between the indictment and the proof at trial, and that if there was some variance, such variance was not material because appellant has failed to demonstrate that the proof at trial showed an "entirely different offense" than what was alleged in the charging instrument. *Ramjattansingh*, 548 S.W.3d at 547.

Accordingly, we hold that the trial court did not err by denying appellant's motion for new trial. We overrule appellant's fourth issue. *See Tinker*, 148 S.W.3d at 673.

## VI. CONCLUSION

We affirm the judgment of the trial court.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Poissant, and Wilson.
Publish – Tex. R. App. P. 47.2(b)

30